## Jenks *et al. versus* Wright.

1. County commissioners cannot sell at private sale land bought by them at a treasurer's sale.

2. The 7th section of Act of March 1815 and 1st section of the Act of 29th of March 1824 (Unseated Lands), construed.

3. There are no provisions in the Act of 1815 curative of irregularities in the sale by the commissioners of lands bought for the county.

4. The principal object of the Act of 1824 in requiring public notice and description of the land in sales by the commissioners was that the owners might know and avail themselves of the permissive right to redeem after five years.

5. The acts authorizing sales of land by the commissioners or treasurer are laws for collection of taxes, not to sacrifice individual property as a forfeiture.

6. Until the county has parted with its title to land bought in for non-payment of taxes, to others than the original owners by performance of the prerequisites to a sale, the title remains in her.

7. Land of Jenks was bought by the commissioners for the county at a tax sale: after the lapse of five years they sold it, at private sale and without advertisement, to Wright. *Held*, that the sale was invalid.

8. The commissioners afterwards transferred the land to Jenks by endorsement on the deed to them, upon payment of taxes, &c. *Held*, to be a redemption by the owner and not a sale, and that the title was revested in Jenks.

9. Wright was bound to know the law regulating sales by commissioners. *Caveat emptor* applied to him.

March 22d 1869. Before Thompson, C. J., Read, Agnew and Williams, JJ. Sharswood, J., at Nisi Prius.

Error to the Court of Common Pleas of *Clearfield county:* No. 146, to July Term 1868.

This was an action of ejectment brought November 5th 1862, by Mary H. Jenks and Anna H. Jenks, by their guardian George W. Andrews, against A. K. Wright and others, for a tract of 63 acres of land in Penn township. The plaintiffs are children and heirs at law of D. B. Jenks, deceased.

On the trial May 26th 1868, before Linn, P. J., it appeared that the title to the land in dispute was in Joseph Boone in 1837, was sold by him December 2d 1837 to David Hewitt, and by him to Elijah Heath on the 26th of January 1838, was assessed in 1844 and 1845 as 40 acres in the name of George Barrett, was sold by the treasurer on the 16th of October 1846 to the commissioners for taxes in the name of Barrett, and sold by Heath to D. B. Jenks January 28th 1848; that D. B. Jenks died May 6th 1848. Andrews was appointed guardian of the plaintiffs December 12th 1859. At the time of trial both plaintiffs had attained age. They gave in evidence a deed dated February 1st 1847, from John W. Wright, treasurer, to the commissioners for 40 acres in Penn township, surveyed to G. R. Barrett, consideration $5.07, recorded November 5th 1862; deed November 5th 1862;

endorsed on the above from the commissioners, who, "in considera-
tion of the sum of $15.91 (taxes and costs with interest thereon),
which G. W. Andrews, as guardian of Mary H. Jenks and Anna H.
Jenks, minor heirs of D. B. Jenks, deceased, hath paid to the trea-
surer of Clearfield county, and for which he hath produced the trea-
surer's receipt, and in consideration that he hath paid all the taxes
which may have been assessed and owing thereon, have bargained,
sold, &c., unto the said G. W. Andrews, as guardian of said minors
of D. B. Jenks and his successors, to and for the use of said minor
heirs of D. B. Jenks and their heirs for ever, all that the within de-
scribed tract of land, with the appertenances, together with all and
singular the improvements, &c., to have and to hold to the said G.
W. Andrews and his successors, to and for the only proper use
and behoof of the said minor heirs of D. B. Jenks and their heirs
for ever."

The plaintiffs here rested.

The defendants then gave evidence of the assessment of the
land in Barrett's name as 40 acres in Penn township without other
description, and sale for taxes to the commissioners as above
stated. Also, deed May 28th 1862, from the commissioners to
A. K. Wright for the same land for the consideration of $25—
the contents stated to be 60 acres more or less. Recorded Sep-
tember 29th 1862.

W. S. Bradley, the commissioners' clerk, testified that the
money paid by Wright had not gone into the county treasury;
that there had been no public sale of the land, and no advertise-
ment. Wright told the commissioners that they had a piece of
land in Penn township, and that he would buy it. He paid the
money to the commissioners. The commissioners' books show no
sale by them. Subsequently John G. Hall came to the commis-
sioners with directions to have the transfer made to the plaintiff,
and told them they had no authority to sell except at public sale.
Andrews paid $15.91 to the treasurer, and the transfer was then
made. The witness was directed by the commissioners to tender
to Wright the money received from him, which was done, but he
refused to take it. The sum paid by Andrews was charged in
the commissioners' book against the treasurer.

The defendants here rested.

J. B. Gordon, Esq., testified for the plaintiff. Dr. Jenks was
the first guardian of the plaintiffs. In 1850 Benjamin McCreight
succeeded Dr. Jenks (who died) in the guardianship. The witness
was of counsel with the guardians, and also one of the administra-
tors, &c., of D. B. Jenks, deceased. About 1848 or 1849 the
witness, by direction of the guardian, wrote to the treasurer of
Clearfield county to ascertain the amount of taxes due on this land,
and could ascertain nothing about the land or taxes. In 1859
or 1860 witness, as attorney for Andrews, who had succeeded

McCreight, with the treasurer of Clearfield county, made a careful examination of his books, and also the books in the commissioners' office, for the purpose of ascertaining and paying the taxes, if any. He told the treasurer that he wished to pay the taxes. He inquired for the land in the name of Heath, Hewitt and some others whom he did not recollect, and of all persons of whom they had any knowledge as having claimed the land. He could find no taxes assessed.

McCreight also testified that he caused a search to be made for the purpose of paying the taxes if any, and could learn of no such land.

The court instructed the jury to find for the plaintiffs, reserving the point whether, under the undisputed evidence, they were entitled to recover. The jury accordingly found a verdict for the plaintiffs.

On the 17th of June 1868 the court entered judgment for the defendants on the reserved point, *non obstante veredicto :* which, on removal of the case to the Supreme Court, was assigned for error.

*W. A. Wallace,* for plaintiff in error.—The description was not such as to make a sale for taxes valid : City *v.* Miller, 13 Wright 457 ; Lyman *v.* City, 6 P. F. Smith 488. The sale by the commissioners to Wright should have been public : Act of March 13th 1815, § 7, 6 Sm. Laws 302, Purd. 998, pl. 51 ; Cuttle *v.* Brockway, 8 Casey 45 ; Act of March 29th 1824, § 1, 8 Sm. Laws 290, Purd. 998, pl. 54 ; Steiner *v.* Coxe, 4 Barr 13 ; McCoy *v.* Michew, 7 W. & S. 386. The real owner, by permission of the commissioners, may redeem even after the expiration of the five years : Steiner *v.* Coxe, *supra;* John *v.* Rush, 2 Harris 341 ; Coxe *v.* Wolcott, 3 Casey 154 ; Laird *v.* Heister, 12 Harris 452. The conveyance to Andrews for the plaintiff was not a private sale, but a redemption by the owner : Laird *v.* Heister, John *v.* Rush, *supra ;* Diamond Coal Co. *v.* Fisher, 7 Harris 267.

*J. B. McEnally,* for defendants in error.—At the end of five years the title of the commissioners was absolute : Kilpatrick *v.* Mathiot, 4 W. & S. 251 ; Huston *v.* Foster, 1 Watts 477. The title passed to the commissioners by the tax sale : Strauch *v.* Shoemaker, 1 W. & S. 166 ; Russell *v.* Werntz, 12 Harris 338. The conveyance to Andrews was not a redemption : Coxe *v.* Wolcott, 3 Casey 154 ; Coxe *v.* Gibson, Id. 160.

The opinion of the court was delivered, May 11th 1869, by
Thompson, C. J.—By the 7th section of the Act of 13th March 1815, the county commissioners of the several counties were authorized to sell at public sale and convey any lands bid in by them at

[Jenks v. Wright.]

treasurer's sales of unseated lands, under the authority of the 6th section of the act, and remaining unredeemed, after the lapse of five years; but the kind and length of notice to be given preceding such sales was not prescribed by the act.   But afterwards, on the 29th March 1827, a supplement to the Act of 13th March 1815 was passed which, among other things, supplied this obvious deficiency, in which the notice to be given by the county commissioners was prescribed to be by publication, in all the newspapers of the county where the land lay, for the period of thirty days preceding such sale, " particularly designating the tracts to be sold;" and in case no newspaper should be published in the county, then in one in the county next adjoining, and by six written or printed advertisements put up in public places in the proper county.

This precise statutory direction was an element in the power of the commissioners to sell, which if wanting, there being no provisions of law curative of irregularities, as in the Act of 1815, must necessarily render a sale, without the observance of these pre-requisites, void.   The mandate of the law being so, its disregard would, as a general rule, be sufficient to render void the act of its ministers.   But there was a two-fold purpose in requiring notice, and a designation of the tracts to be sold, beyond mere form. One was to prevent favoritism in the sales; but the principal one was, doubtless, to reach the owners with notice, so that they might avail themselves of the permissive right to redeem after the lapse of five years, a practice everywhere allowed.   The notice required to contain a designation of the tract proves this.   The county, if selling as absolute proprietor, would be interested in nothing more than a general designation, sufficient only to attract purchasers. The special designation was intended to reach the eye of the owner, and if possible prevent the loss to him of his property for a trifle, by enabling him to redeem from the county before sale.   Of course, after that, the commissioners would be powerless in regard to the land.   That this was a principal reason for the required notice and a designation of the land previous to the sale, is strengthened by the consideration, that the Acts of Assembly for the sales of unseated lands by the county treasurer, or by the county commissioners, are tax laws, and the object of the sales is the collection of taxes.   In authorizing this, the sacrifice of individual property as a forfeiture was not intended, and all these provisions were intended to prevent it, consistent with the duty to collect the tax: Steiner v. Coxe, 4 Barr 15.   It is logical, therefore, to hold that until the county has parted with its title to lands bought in for non-payment of taxes, to others than original owners, by the performance at least substantially of the required pre-requisites to a sale, that the title remains in her, so far at least as such parties are concerned.   The county might be estopped from asserting irregularities in its own sales, undoubtedly, if it attempted to do so.

[Jenks *v.* Wright.]

To apply these principles: After the lapse of five years from the sale of the land in controversy by the treasurer to the county commissioners, the latter sold and conveyed the land by *private sale*, to A. K. Wright, for the consideration of $25, under whom defence was made below. Advertisements there were none, and no designation of property, or public sale. This sale was in 1862 in September. In November of the same year, Andrews, guardian of the minor owners of the land, applied to the commissioners of Clearfield to redeem the land; this the commissioners permitted, received the redemption-money, and endorsed their conveyance of the land to him as guardian for the use of his wards, on the back of the treasurer's deed, as directed by Act of Assembly, and caused to be tendered to Wright the money paid by him to the county on his purchase. There was no laches imputable to the guardian for not sooner redeeming, as it was not until after repeated examinations, running through several years, that it was at last accidentally discovered that the land had been sold for taxes. Nor had Wright acquired any equity by expenditures in the way of improvements that we hear of, when he was offered his money back by the county commissioners, on the ground of a missale.

As a purchaser from the county commissioners, we think Wright took no title. He was as much bound to know the law regulating sales by them, as they; and he is presumed to have known that they were selling to him in disregard of the law, and which disregard would necessarily increase the liability of the original owners, for want of notice, to a loss of 60 acres of land for the small sum of $15 and some cents, if it could be held good. The rule of *caveat emptor* applied to him. The right of the commissioners to permit a redemption any time before sale is not to be disputed. It was recognised in Steiner *v.* Coxe, and has been practised in hundreds of cases. While we hold the private sale to Wright invalid, we at the same time hold that the transfer of the commissioners to the guardian, for the use of the owners, was only in form a sale and conveyance, and was in fact a redemption of the land from the sale to the commissioners. Steiner *v.* Coxe, *supra*. The previous sale being invalid, the redemption extinguished the title of the county by investing the owners with title.

It is not material in this view, to discuss the point whether a purchase at private sale from the commissioners in a case like this, would operate to redeem the land and nothing more. Even if there had been such privity as to authorize Wright to redeem for the heirs, a tender or reimbursement of the money expended by him in redeeming, would entitle them to call for a reconveyance, or enable them to recover the land in ejectment against him or those claiming under him.

As there is nothing else in the case important to be discussed,

[Jenks *v.* Wright.]

without further elaboration or remark, we are brought to the conclusion, that the learned judge below erred in entering judgment on the reserved question in favor of the defendant, but should have given judgment on the verdict for the plaintiffs.

> Now, May 11th 1869, the judgment of the Court of Common Pleas in this case is reversed and set aside: and it is considered and adjudged that judgment be, and is hereby entered for the plaintiffs on the verdict, with six cents damages and costs of suit . and of this writ of error.