IN

# THE SUPREME COURT

OF

## PENNSYLVANIA.

WESTERN DISTRICT—PITTSBURGH, 1880.

## Metz *versus* Hipps.

1. The saving clause in the 4th section of the Act of March 13th 1815, relative to the sale of unseated lands, provides that minors and insane persons, whose lands have been sold, are entitled to two years after removal of their disability wherein to redeem the same : *Held*, that this clause does not extend to cases of sales made under the 5th section of said act to the county commissioners, and to the redemption therefrom as provided in the 6th section.

2. J. was born in 1851 and her title to certain land accrued in 1854. In 1862 said land was sold for arrearages of taxes, in accordance with the provisions of the Act of March 13th 1815, to the county commissioners and by them sold in 1868 to H. Two years after coming of age, in 1874, J. paid to the treasurer of the county the amount necessary to redeem her land and brought ejectment against H. to recover the same : *Held*, that the redemption of J. was too late and would not divest the title of defendant.

3. Per Sharswood, C. J.—Limitations of remedies are purely statutory. While it may well be doubted whether the legislature could enact an immediate bar to any existing right, yet it is clearly settled that to prescribe the period within which any right may be enforced is within their power. They may or may not except disabilities, according to their pleasure. If they omit to say anything upon the subject, there is no power in the courts to supply what may have been an accidental or intentional omission.

October 25th 1880. Before Sharswood, C. J., Mercur, Gordon, Paxson, Trunkey, Sterrett and Green, JJ.

Error to the Court of. Common Pleas of *Cambria county:* Of October and November Term 1879, No. 304.

Ejectment by Thomas J. Metz and Jennie, his wife, in right of said wife, against John Hipps and Uriah Lloyd to recover the

(15)

[Metz *v.* Hipps.]

undivided one-fourth part of a tract of land in Chest township, Cambria county, surveyed in pursuance of a warrant granted to James Hunter. The facts are set forth in the following opinion of Orvis, A. L. J., of the Twenty-fifth Judicial District.

"On the trial of the cause the plaintiff showed a complete tax title to this tract in Robert McNamara, the elder, who died in 1854, leaving four heirs, viz. : a daughter, Martha, two sons, Robert and William, and one granddaughter, the present plaintiff, and who was the daughter of Ellen Maria, wife of James Patton. Mrs. Patton, the daughter of Robert McNamara, and mother of the plaintiff, died in 1853. The plaintiff was born September 10th 1851. The James Hunter tract was regularly assessed with taxes for the years 1860 and 1861, and on the 13th of June 1862 was regularly sold by the treasurer to the commissioners of Cambria county. The tract not having been redeemed within five years the commissioners, at a public sale, on September 8th 1868, sold and conveyed the same to John· Hipps, one of the defendants. On the 25th of August 1874, within two years after Jennie McN. P. Metz had attained her majority, the amount of money necessary to redeem her undivided fourth part of this tract was paid by her agent to the county treasurer. The defendants allege this redemption to be without legal authority, and therefore void. Notice having been given of a claim for mesne profits, and there being no fact in dispute concerning the title, we directed a verdict for the plaintiff, and submitted to the jury to find the quantity and value of the timber cut by the defendants, reserving the question whether the redemption made by the plaintiff on August 25th 1874 was good and valid in law so as to divest the defendant's title acquired under the sale by the commissioners September 8th 1868. The jury returned a verdict for the plaintiff, and assessed the damages at $3508. If the plaintiff has the right to redeem this land any time within two years after attaining her majority, judgment should be entered upon the verdict for the plaintiff. If her right to redeem terminated at the end of five years from the treasurer's sale to the commissioners, judgment should be entered for the defendants *non obstante veredicto.*

"The decision of this question depends upon the proper construction of the Act of March 13th 1815, 6 Sm. L. 299, regulating the sale of unseated lands for taxes. Does the proviso to the 4th section extending the time during which certain classes of persons under disability may redeem their lands sold by the treasurer extend to sales made under the 5th section to the county commissioners, and to the redemption therefrom as provided for in the 6th section?· It seems somewhat strange that this question has not arisen and been settled by the Supreme Court long ago, when we remember the date of the act under which it arises. After the most careful examination of our books of reports, we are unable to find that the question has ever before been even mooted. It is true that in Sidle

[Metz v. Hipps.]

v. Walters, 5 Watts 389, and in some other cases, it is said that unseated land, the property of minors, sold for taxes, is subject to be redeemed at any time within two years after they respectively come of age. But wherever this or similar language occurs it is in the decision of cases where the land was sold to individuals and not to the county. It is equally true that in Steiner v. Coxe, 4 Barr 13, and in many subsequent cases, the Supreme Court has held that after the lapse of five years from a treasurer's sale to the commissioners the title of the county becomes absolute. But in all these cases the former owner was under no disability, and of course the judges delivering the opinions had not in their minds the question raised in this case. From the fact that this question seems never to have been before raised, we at first were inclined to infer that it was so clear and plain that all lawyers agreed about it; but to our surprise, on submitting the question to several eminent and learned land lawyers, we found they divided nearly equally in their construction of the act in this particular. We are therefore left to come to the best conclusion we may, after as thorough consideration as we have been able to give the subject.

" A literal reading of the proviso of the 4th section of the act would make it apply only to the redemption provided for in the body of the section. The section begins : ' If the owner or owners of land, sold as aforesaid, shall make or cause to be made, within two years after such sale, an offer or legal tender of the amount of the taxes for which the said lands were sold, and the costs, together with the additional sum of twenty-five per cent. on the same to the county treasurer,' &c., he or they may recover the same by due course of law, &c. Provided, 'that when the owner or owners of land sold as aforesaid, shall at the time of such sale be an orphan or orphans, or insane and residing within the United States, two years after such disability is removed shall be allowed such person or persons,' &c. This would look as though the proviso referred only to the kind of sales from which the owners not under disability had to redeem within two years by paying the taxes, costs and twenty-five per cent. on the same.

" The counsel for the plaintiff, however, contend that this would be too narrow and technical a mode of reading the statute—that it is to be considered as a whole, and the words of this proviso should have the same force and effect as though they were in a section by themselves at the end of the act; in which case they would undoubtedly apply to all sales made in pursuance of any section of the act. That the general purpose of the law was to enforce the payment of taxes and not to forfeit or confiscate the estates of citizens; that the right of redemption is an equitable and beneficial one, and should not be narrowed by construction : Patterson v. Brindle, 9 Watts 98; Dubois v. Hepburn, 10 Peters 1; Jenks v. Wright, 11 P. F. Smith 410 ; Lynch v. Brudie, 13 Id. 206. That

15 Norris—2

[Metz *v.* Hipps.]

the general policy of our law has been to preserve and protect the rights of minors and others under disability, especially from all species of forfeiture by reason of laches. That no good reason can be assigned for denying the same privileges to minors when their lands are sold to the county, which the act undoubtedly gives them if the same lands were sold to individuals. That the provisions of the 4th section of the act, which cures all defects in the forms of sales of unseated lands for taxes, has been repeatedly held by the Supreme Court to apply to sales made to the commissioners under the 5th section: Peters *v.* Heasley, 10 Watts 208; Lee *v.* Jedds Coal Co., 4 W. N. C. 231; Huston *v.* Foster, 1 Watts 477; Laird *v.* Heister, 12 Harris 452, and many other cases. That if the provision curing defects in the forms of sales of unseated lands contained in the 4th section applies to all sales made in pursuance of the act, whether made to individuals or to the commissioners, *a fortiori* the provision in favor of minors in the same section should apply to all sales under the act, even though made to the county.

" We have given these several arguments due consideration, and though many of them might be sufficient if addressed to the legislature to induce that body to change the law so as to preserve the rights of minors when their lands are sold to the county, yet we are not convinced by them that the legislature, by the enactment of March 13th 1815, did so make the law. A careful reading of the entire act brings our mind to the opposite conclusion. The first section directs the treasurers of the several counties to commence on the second Monday of June, A. D. 1816, and at the expiration of every two years thereafter, and sell all tracts and parts of tracts of unseated land upon which taxes shall have remained due and unpaid for one year; directs the treasurer to give at least sixty days' notice of the time and place of such sales, the township or townships in which said tracts of land are respectively situated, the number of acres contained in each tract, and the names of the warrantees or owners thereof, and the sums due upon each tract for taxes, under the penalty of $50 in each and every case, and then adds : ' but the neglect of such treasurer to cause the said publications to be made shall not in any case invalidate any sale made in pursuance of the provisions of this act.' The 2d section simply authorizes the treasurer in office to execute and deliver deeds for lands sold by their predecessors. The 3d section authorizes the treasurers to sue for and recover the purchase-money, and provides that it shall not ' be competent for the defendant in such suit to give in evidence any irregularity in the assessment or proceeding of the commissioners or treasurer touching any sale made in pursuance of this act.' Sect. 4 provides : ' that if the owner or owners of land sold as aforesaid shall make or cause to be made within two years after such sale, an offer or legal tender of the

[Metz v. Hipps.]

amount of the taxes for which the said lands were sold and the costs together with the additional sum of twenty-five per cent. on the same to the county treasurer, who is hereby authorized and required to receive and receipt for the same, and to pay it over to the said purchaser on demand * * * said owner or owners shall be entitled to recover the same by due course of law. * * * Provided, that where the owner or owners of land sold as aforesaid, shall at the time of such sale be an orphan or orphans, or insane and residing within the United States, two years after such disability is removed shall be allowed such person or persons, their heirs or legal representatives to bring their suit or action for recovery of the land so sold,' &c., &c.   By the Act of April 25th 1850, the words 'orphan or orphans' in the foregoing proviso are directed to be taken and construed to mean 'minor or minors,' and though the original act does not expressly give to such persons two years after their disability is removed to redeem, but only to bring their actions to recover said land, yet the Supreme Court in Sidle v. Walters, *supra*, has contrued the proviso to extend the right of redemption that far, otherwise the entire proviso would be meaningless.

" So far this act is merely an amendment of the act of April 3d 1804, directing the mode of selling unseated lands for taxes, and seems to provide a system complete in itself for all cases where any individual will bid the amount of taxes and costs for the land. The three following sections are entirely new, and establish a different system for all cases where no one will bid the amount of taxes and costs for any tract:

" ' Sect. 5. That if any tract of unseated land, hereafter to be sold for taxes due at this time, or which shall hereafter be imposed, shall not have bidden for it a. sum equal to the whole amount of taxes for which it shall have been advertised and the costs accrued, then and in that case, it shall be the duty of the commissioners of the proper county, or any of them, to bid off the same, and a deed shall thereupon be made by the treasurer to the commissioners for the time being and to their successors in office, to and for the use of the proper county; and it shall be the duty of the commissioners to provide a book wherein shall be entered the name of the person as whose estate the same shall have been sold, the quantity of land and the amount of taxes it was sold for; and every such tract of land shall not thereafter, so long as the same shall remain the property of the county, be charged in the duplicate of the proper collector: but for five years next following such sale, if it shall so long remain unredeemed, the commissioners shall, in separate columns in the same book, charge every such tract of land with reasonable county and road tax, according to the quality of said land, not exceeding in any case the sum of $6 for every hundred acres.'

" ' Sect. 6. That the right of redemption shall remain in the

[Metz *v.* Hipps.]

real owner of such land for five years after such sale, and on pay-
ing the treasurer of the county all the taxes and costs due thereon
at the time of sale, and interest therefor for the same time, and
also the taxes which shall have been assessed thereon from year to
year after the sale, and interest of each assessment to be counted
from the time it ought to have been paid, and on production of the
treasurer's receipt, the commissioners shall, by deed poll, endorsed
on the back of the treasurer's deed to them, convey to the persons
who shall have been the owner of the land at the time of sale, or
his legal representative, all the right and title-which the county may
have acquired under such sale as aforesaid; the moneys so received
for road taxes shall be paid to the supervisors of the roads of the
township within which such lands shall lie, on orders to be drawn
by the commissioners on the treasurer to be applied by them in
making and repairing the roads and highways in their respective
townships.'

" ' Sect. 7. That if the owner of any such land shall not redeem
the same *within* the period aforesaid, it shall thereafter be lawful
for the commissioners to sell any such lands by public sale, and
make a deed therefor to the purchaser, which shall be available in
law, as well against the county as against the person or persons as
whose estate the same has been sold, but no tract shall be sold for
a sum less than the amount of taxes, costs and interest, which
shall be due at the time of such sale by the commissioners, and
such land shall thereafter be charged by the township assessors
in the name of such last purchaser or redeemer, and shall again be
liable to be assessed and sold for taxes, agreeably to this act and
the act to which this is a supplement.'

" The subsequent sections of this act afford no additional means
of determining the question now at issue. It would, however, be
difficult to imagine what words the legislature could have used to
limit the right of redemption to five years in cases of land bought
by the commissioners, regardless of the age and condition of the
former owner, if the language quoted is liable to a different con-
struction. ' The right of redemption shall remain in the real
owner of such land for five years after such sale,' is as clear and
conclusive as if the words and no longer had been added; and as
no exception is made in favor of minors or insane persons in respect
to this right of redemption, we must presume the legislature in-
tended there should be none. It must be borne in mind that the
rights of all parties under tax sale in Pennsylvania, including the
right of the owner to redeem, is purely statutory, and while we may
not abridge or narrow the right of redemption by construction,
neither can we extend it to any cases in which the legislature has
not seen fit to give it. It is not pertinent to say that the minor is
as much entitled to it in this case as if the land had been sold by
the treasurer to an individual. Why the legislature gave it in the

[Metz *v.* Hipps.]

one case and did not give it in the other we may not be able at this late day to ascertain. But if it were necessary to give a reason one might be found in the fact that as to all lands bought by the commissioners, the terms of redemption were made easier by not requiring the twenty-five per cent. additional to the taxes and costs to be paid, but only simple interest, and the time for redemption was extended from two to five years, which the legislature may have thought was sufficient for persons under disability, they generally having guardians or committees to look after estates : especially as the lands that would be thus bought by the commissioners were only those of so little value that no individual would bid the taxes and costs for them.

" If any further argument than that found in the words of the act were necessary to show that the legislature did not contemplate that the right to redeem from a treasurer's sale to the commissioners could exist in any owner beyond the period of five years, it may be found in the absence of all provisions in the act which would be necessary if such right survived. If the infant or insane owner of a tract of land sold to the commissioners has the right to redeem after the expiration of five years, one of two consequences must necessarily follow : either first, the commissioners may not sell such tract at all as long as the right of redemption exists, viz. : until the former shall have arrived at the age of twenty-three, if he was a minor, or until he recovered his reason if he had been insane ; or secondly, the commissioners may sell at the expiration of five years after their purchase, in which case their vendee would take the land subject to the right of the former owner still to redeem. If we assume the first to be true, it would then clearly be the duty of the county commissioners whenever they purchase a tract of land at treasurer's sale to make inquiries and ascertain the age and condition of the former owner in order that they might know when his right of redemption would expire. In many instances this would be impossible for them to do as the land may not have been assessed in the name of the real owner, who may be a non-resident of the county, and his title deeds may not have been placed on record. Besides, this duty would be entirely foreign to the ordinary official duties of county commissioners. It is, however, sufficient to say that no such duty was imposed upon them by the act, either in express words or by necessary implication, for they are clearly authorized to sell every tract of unseated land ' if the owner of any such land shall not redeem the same within the period aforesaid,' *i. e.* within five years after the treasurer's sale.

" If, therefore, the right of redemption in any case survives this period, the commissioners may sell, but the purchaser takes the land subject still to the right of the former owner to redeem from the treasurer's sale. If a redemption should be made under such circumstances to whom would the redemption money belong ? Not to the

[Metz *v.* Hipps.]

county and supervisors of the roads, for they have already received all that was due the public from the proceeds of the commissioners' sale. It may be said that in equity it belongs to the purchaser at the commissioners' sale, as he has already paid the same taxes and costs into the county treasury; but the county treasurer is not authorized or required to pay this redemption to him as he is to pay the redemption money to the purchaser at treasurer's sale under the 4th section of this act. But even if we concede that the vendee of the county would be entitled to this redemption money, it might not compensate him for the amount he paid the county for the land. In consequence of the restriction in the 7th section he could not purchase it for less than the taxes, costs and interest; he might pay much more. In the case of Goodman *v.* Sanger, 4 Norris 37, a tract of land was sold. at commissioners' sale for $10,000, although the taxes, costs and interest due the county at the time of the sale could not have amounted to $100. During the whole time which this tract was held by the county of Northumberland the former owner might have been insane. Had he, subsequent to the sale of the commissioners, recovered his reason and exercised his alleged right to redeem this tract he could have done so by paying the taxes and costs due at the time of the treasurer's sale in 1816, with simple interest upon the same, from that time to the date of redemption, as no taxes were subsequently assessed upon this tract in the county of Northumberland. The sum of money required thus to redeem the tract would not have reached one per cent. of the amount for which the tract sold at commissioners' sale. Conceding this redemption money to belong to the purchaser from the county, how would he be reimbursed the additional $9900 which he paid the county for·the land? Clearly this act does not require. the county to refund the money; the former owner is only required to pay the taxes, costs and interest, and yet the purchaser at commissioners' sale loses his title by a redemption without having the money which he paid refunded to him. It may be said that he purchased at his own risk, and if he gets no title it is his own loss. It is true that in all commissioners' sales the rule of *caveat emptor* applies. The purchaser necessarily runs the risk of the existence and value of the tract and the validity of the title. He simply purchases and pays for the title which the county has; if he gets this he must be satisfied, whether it is valuable or not. But surely the law will not provide to take that title from him by a subsequent redemption without at the same time providing to restore to him the consideration which he paid for it. The very absence of all provisions in the act for adjusting the equities between the former owner, the county and the purchaser at commissioners' sale in case a tract of land was redeemed from the sale by the treasurer to the commissioners after the commissioners had regularly re-sold the same, is conclusive to our mind that the legislature never intended any such

[Metz v. Hipps.]

right of redemption to exist. As long as the county continues to own lands purchased by the commissioners at a treasurer's sale the owner may redeem with the consent of the commissioners, although more than five years may have elapsed since their purchase : Steiner v. Coxe, supra ; Coxe v. Walcot & Smith, 3 Casey 154. But after the commissioners have regularly sold the land at public sale no act of theirs or of the county treasurer in receiving redemption money can defeat the title of the county's vendee. Diamond Coal Co. v. Fisher, 7 Harris 267.

" We are, therefore, brought to the conclusion that the redemption by the plaintiff of the undivided one-fourth of the James Hunter tract on the twenty-fifth day of August 1874, more than twelve years after the treasurer's sale to the county commissioners, and nearly six years after the commissioners had sold to John Hipps, one of the defendants, was without legal warrant or authority, and, therefore, inoperative to divest the defendant's title."

Plaintiffs took this writ, alleging that the court erred in entering judgment for defendants non obstante veredicto.

Samuel S. Blair, for plaintiffs in error.

F. A. Shoemaker and W. Horace Rose, for defendants in error.

Chief Justice SHARSWOOD delivered the opinion of the court, November 8th 1880.

It seems scarcely necessary to add anything to the clear and able opinion of the learned judge of the court below, which we adopt as the opinion of this court. Limitations of remedies are purely statutory. While it may well be doubted whether the legislature could enact an immediate bar to any existing right, yet it is clearly settled that to prescribe the period within which any right may be enforced is within their power. They may or may not except disabilities according to their pleasure. If they omit to say anything upon the subject there is no power in the courts to supply what may have been an accidental or unintentional omission. The case of Warfield v. Fox, 3 P. F. Smith 382, strongly illustrates this doctrine. There it was expressly ruled that a saving from the operation of statutes for disabilities must be expressed or it does not exist. It is true that some pains were taken to show in the opinion that the statute there in question did not purport to be a supplement to the general Act of 1785, but that was merely an answer to the argument that the disabilities of that act were impliedly incorporated with it. We do not understand from it that if it had been a supplement to the Act of 1785 the determination would have been different. All acts of limitation are in pari materia and the same principles of construction are to be applied. If they were all to be consolidated into one statute, it would not

[Metz *v.* Hipps.]

follow that a saving of disabilities, specially enacted as to one class of subjects, would be implied as to all others. If the first section of such a statute related to limitation of actions for lands, and contained a saving of disabilities, it would not follow that such a saving would be implied as to personal actions. Each subject-matter must be considered as distinct. Had the seventh section of the Act of April 22d 1856 been a subsequent section of such a statute, it would not be a sound construction to import into it the saving of disabilities contained in the first, unless there was some reference to it. The argument of the learned counsel of the plaintiff in error that the fourth and seventh sections of the Act of 1815, being part of the same statute, are to be construed as if the seventh section was a mere supplement to the fourth is therefore more ingenious than sound. They relate to different subjects, the one to sales by the treasurer to individuals in which a period of two years is allowed for redemption, the other a sale to the commissioners in which the period is extended to five years. In the fourth section the saving of disabilities is expressly limited to sales *as aforesaid* made by the treasurer. In the seventh section there is no saving of disabilities. It is useless to speculate as to what may have been the reason of this distinction. If there were no reason, or a bad one, it would make no difference. It is enough to say that such was the will of the law makers. Besides the incongruities pointed out in the opinion of the learned judge below it is enough to say that they may have meant that to secure a full price for lands held by the county the purchasers should have a clear and indefeasible title, and thus the public treasury be benefited.

Judgment affirmed.