## Redemption of Faust Land

*George M. Spence,* for petitioners.
*Charles Evans,* for protestants.

GRIFFITH, J., October 11, 1944.—This is a petition filed by the County Commissioners of Cambria County under the provisions of the Act of May 21, 1937, P. L. 787, as amended by the Act of July 29, 1941, P. L. 600, and as finally amended by the Act of May 21, 1943, P. L. 282, 72 PS §5878 (*a*), (*b*), (*c*), (*d*).

The petition avers that on June 27, 1938, the County of Cambria purchased at a treasurer's sale a piece of land containing 25 acres of surface land situate in Adams Township assessed in the name of G. E. Faust; that the right of redemption expired five years later, or on June 27, 1943, and was not exercised; that Sanford Noon has offered to purchase said land from the County of Cambria for the sum of $200; and that the amount of taxes and costs accrued against the same is in the sum of $403.

On February 14, 1944, a preliminary decree was signed by the court fixing February 23, 1944, at 10 a.m. as the time for hearing on said petition. Notice of the hearing was given to the taxing bodies and the former owner, as required by the act of assembly under whose provisions the petition was filed.

Following said notice the liquidating trustees of the Citizens National Bank of Windber offered the commissioners the sum of $275 for the same property, said trustees having purchased the same from Gussie E. Faust, the owner, by deed dated March 25, 1938, and recorded in the Office for Recording Deeds in and for Cambria County in deed book vol. 479, at page 16.

On February 23, 1944, Charles S. Evans, Esq., representing the liquidating trustees of the Citizens National Bank of Windber, and Clarence E. Davis, Esq., representing Sanford Noon, the petitioner, appeared at the county commissioners' office and engaged in competitive bidding. Mr. Noon's first bid was $250. Whereupon Mr. Evans bid $275. Mr. Noon then bid $300 and Mr. Evans $325. Upon Mr. Noon raising his bid to $350, Mr. Evans announced that he was withdrawing from the bidding and would redeem the property on behalf of the owner by paying the full amount due thereon. At this time the treasurer's statement showed that the full amount due on the property was $403, although it subsequently developed that $404.67 was the exact amount. Mr. Noon then bid $425, or an amount in excess of taxes, penalties, interest and costs. Mr. Evans, on behalf of the owner, tendered a check to the county treasurer in the amount of $404.67, in full payment of taxes, penalties, interest and costs, and requested the county commissioners to permit him to redeem the property. This tender was made on February 23, 1944. Mr. Noon also delivered his check in the sum of $425 to the county commissioners, and the commissioners are willing to accept that sum subject to the approval of the court, and request the court therefore to approve their sale to Sanford Noon in the sum of $425. The former owner objects to the approval of the sale to Noon and desires to redeem the property under the provisions of the Act of July 28, 1941, P. L. 535, 72 PS §6105. It is admitted by the county that the owner has the right to take advantage of any benefits which may be accruing to it under the provisions of this act even though he tendered the full amount of taxes, penalties, interest, and costs in a lump sum rather than in instalment payments as contemplated by the act.

The title and the first section of the Act of July 28, 1941, P. L. 535, are as follows:

"An Act providing for the redemption of real property purchased by political subdivisions at tax sales upon the payment of the amount charged against the same and costs by installment payments, and prescribing the procedure therefor.

"Section 1. In all cases where heretofore or hereafter real property shall have been or shall be purchased at any tax sale by any political subdivision, any person who was or is entitled under existing law to redeem such property shall have such right of redemption so long as the title thereto remains in said political subdivision upon the payment of the amount due thereon by instalments in the manner hereinafter provided, whether or not the period during which the right of redemption existed shall have expired."

The question now to be determined by the court is whether to approve the agreement of sale entered into between the county commissioners and Sanford Noon in accordance with the petition filed by said commissioners, or to deny the prayer of the petition for approval and direct the county commissioners to permit the former owner of the land to redeem the same for the full amount of the taxes, penalties, interest, and costs.

The position of the county commissioners is that after the county has agreed to sell real estate acquired at tax sale for a price in excess of the total taxes, penalties, interest, and costs, and has petitioned the court for approval of said sale, the former owner no longer has an absolute right to redeem from the county under the Act of July 28, 1941, P. L. 535, It will be seen, however, that this is not the precise question before the court, because in this case the former owner made his offer to redeem prior to the time the purchaser offered an amount in excess of the taxes, penalties, interest, and costs. However, we believe it is not necessary for the former owner to rely

on the fact that his offer to redeem was made before the bidding by the purchaser had reached the amount required for redemption.

It is against the public interest and consistent neither with our system of free enterprise nor with the dignity of a free government to confiscate the property of the citizens. Hence the right to redeem real property purchased by political subdivisions at tax sales is a beneficial and remedial one, and statutes granting such rights should be liberally construed to the end that the owner be not finally deprived of such property unless the tax cannot otherwise be collected.

In Steiner et al. v. Coxe, 4 Pa. 13, Chief Justice Gibson said (p. 26):

"The end being attained without it, the county is indifferent to the destination of the land; and the commissioners are consequently not bound by any motive of policy to sacrifice the property of the debtor. It consists not with the justice or the dignity of a free government to confiscate the estates of its citizens; or make them bear more than their respective proportions of the public burdens; or to speculate on their shortcomings as sources of increased revenue."

In Jenks et al. v. Wright, 61 Pa. 410, Chief Justice Thompson said (p. 413):

"In authorizing this [the sale], the sacrifice of individual property as a forfeiture was not intended, and all these provisions were intended to prevent it, consistent with the duty to collect the tax."

In Metz v. Hipps, 96 Pa. 15, the court said (p. 17):

"That the general purpose of the law was to enforce the payment of taxes and not to forfeit or confiscate the estates of citizens; that the right to redemption is an equitable and beneficial one, and should not be narrowed by construction."

In Simpson v. Meyers, 197 Pa. 522, Justice Mestrezat said (p. 527):

" '. . . acts authorizing sales of land by the commissioners or treasurer are laws for collection of taxes; not to sacrifice individual property as a forfeiture': Jenks v. Wright, 61 Pa. 410. This construction of the acts of assembly relative to the sale of lands for taxes is supported by decisions of this court." And in Gault's Appeal, 33 Pa. 94, Justice Woodward said (p. 98) :

"Whatever tends to modify this right is favourable to the citizen, and ought to be liberally construed, on the principle that remedial statutes are to be beneficially expounded.

"Redemption is the last chance of the citizen to recover his rights of property, and yet, it is here, at the point of the owner's extremity, the appellant's argument would have us apply strictness of construction to a statute made for the owner's relief. The *owner* may redeem, says the statute: but, says the appellant, those who offered to redeem on the 15th September 1858 were not owners at the time of the sale, but became owners afterward. . . .

"Now, however, we might be disposed to lay hold of such criticisms to prevent the operation of a statute which proposed to *divest* titles, they are not to arrest a statute which has for its object the *restoration* of a title to the real owner. This would be hypercriticism in the wrong direction."

Prior to the enactment of the Act of July 28, 1941, P. L. 535, the situation was as follows:

1. An owner whose land was sold for taxes at a treasurer's sale to the county commissioners had either two or five years from the date of the treasurer's sale within which to redeem his property, depending upon whether the county treasurer's sale occurred on or prior to June 20, 1939, or subsequent thereto.

2. During the above period of redemption the purchaser at a county treasurer's sale, whether an individual or a municipal subdivision, acquired only an inchoate or inceptive title, and the owner retained title

with all the incidents of ownership, but the owner's title failed when the redemption period expired, and at that moment the purchaser acquired an absolute, indefeasible title.

3. The commissioners, in their discretion, either before or after the expiration of the redemption period, and while title remained in the county, could have permitted redemption by the owner upon payment of the taxes, interest, and costs with or without penalties; or, with the approval of the court, upon payment of a lesser sum by way of compromise.

4. After expiration of the redemption period, the commissioners could have refused to sell the land either at public or private sale in their discretion.

In support of its position that the former owner lost his right to redemption in this case on June 27, 1943, in spite of the provisions of the Act of July 28, 1941, P. L. 535, the county gives several reasons.

In the first place, it is urged that as used in the Act of 1941 the word "shall" has a permissive and not a peremptory or imperative meaning, and should read "may", and that the former owner in this case did not have an absolute right to redeem the property when he made a tender of all taxes, penalties, interest, and costs, since the period of redemption had already expired.

It is true, as said by the county, that the intent of the act controls, and that when the spirit and purpose of the act require the word "shall" to be construed as permissive it will be done: Commonwealth ex rel. Bell v. Powell, 249 Pa. 144, 150. It is urged that a reasonable construction of section 1 of the act is that a person having an absolute right of redemption prior to the expiration of the redemption period, or having a permissive right after its expiration and while title is still in the county, has the right to exercise that right or may be permitted to exercise it, as the case may be, by paying the amount due in instalments. In other words, it is contended that the whole purpose of the first section

of the act was to permit instalment payments, and that the legislature had no intention of granting the former owner an absolute right of redemption after the expiration of the original redemption period. If we omit from our consideration for the moment the instalment device for making payment, section 1 would read as follows:

". . . any person who *was* or is entitled under existing law to redeem such property shall have such right of redemption so long as the title thereto remains in said political subdivision . . . whether or not the period during which the right of redemption existed shall have expired." (Italics supplied.)

When we recall that under the uniform rule laid down by the courts as well as specifically by the Act of July 17, 1935, P. L. 1091, 72 PS §5879, the county commissioners already had the right in their discretion to permit redemption of real property so long as title remained in the county, it is impossible for us to see any utility whatever in the language of section 1 above quoted unless the intent of the section was to give a former owner an absolute right of redemption so long as title remained in the county regardless of the expiration or existence of the former period of redemption.

Although the word "shall" may be construed "may" when the obvious intent and purpose of the act demands, yet ordinarily the sense of the word "shall" is imperative and it is regarded as peremptory: Lynn v. Lynn, 256 Pa. 563. The Statutory Construction Act of May 28, 1937, P. L. 1019, art. IV, sec. 51, 46 PS §551, provides:

"When the words of a law are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."

As Chief Justice Frazer said in Reitz v. Sinking Fund Commission of Jefferson County, 315 Pa. 87, 89:

"The intention and meaning of the legislature must primarily be determined from the language of the

statute itself, and not from conjectures aliunde. When the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning . . ."

The statute refers to the matter of redemption by the former owner as a right, and enacts that he shall have such right so long as the title to the property remains in the political subdivision. It will be noted that the language used in the prior acts on this subject was merely permissive. For example, the Act of May 25, 1933, P. L. 1018, and the Act of May 21, 1937, P. L. 787, provided that such political subdivisions *may* agree with the former owner to a compromise or a reduction of the taxes due; but the Act of July 28, 1941, P. L. 535, says that the former owner *"shall have such right of redemption"* so long as the title thereto remains in the political subdivision. This change in language is surely not without significance.

"It is an elementary rule of statutory construction that a change of language indicates a change of legislative intent": Ogilvie's Estate, 291 Pa. 326, 333.

This change in language from that of the prior acts on the same subject, and therefore in pari materia with it, indicates a clear legislative intent to convert what before was a matter of grace or discretion into a right on the part of the former owner of the property.

The second position taken by the county is that, if as used in the Act of 1941 the word "shall" has a peremptory or imperative meaning, then the act is unconstitutional for two reasons: one, that it deals with more than one subject and is, therefore, an "omnibus" bill; and two, that there is insufficient notice in the title that the period of redemption was being extended. Let us consider these points in that order.

The county contends that if the Act of 1941 is to be construed as giving a former owner an unqualified

right of redemption so long as title remains in the county, the act contains four subjects and as a result violates article III, sec. 3, of the Constitution of Pennsylvania, which provides:

"No bill, except general appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in its title."

It is contended that the four subjects contained in such acts are the following:

1. Permitting *redemption* by instalment payments.

2. Extending the rights of the owner to *redeem* from a period of two years after the acquisition of title to any time until sold by the purchasing municipality.

3. Destroying the municipality's hitherto absolute and indefeasible title and substituting therefor merely the right to convey to a third person if the former owner does not *redeem* before actual conveyance.

4. Overruling the judicial rule, later sanctioned by statute, that the county commissioners may, but are not required to, permit *redemption* by a former owner after the statutory period has expired.

The act under consideration is entitled ". . . the redemption of real property purchased by political subdivisions at tax sales. . . ." Each of the "subjects" referred to by the county as being included in the act also deals with "redemption of real property purchased by political subdivisions at tax sales". The so-called "subjects" are not, as we view it, separate subjects in any sense, but merely a statement of the effects which the Act of 1941 will have upon the law as it stood at the time of its enactment. We know of no rule of statutory construction that requires the title of an act to give notice of all of the effects which that act may have upon prior legislative enactments or judicial decisions. Such a requirement would of course be impossible of attainment. In this connection the Supreme Court in Hadley's Case, 336 Pa. 100, 107, said:

"It must be remembered that the constitutional provision as to titles was intended to curb the practice of

incorporating in one bill a variety of distinct and independent subjects of legislation the real purpose of which was often intentionally disguised by a misleading title or covered by the all-comprehensive phrase, 'and for other purposes' with which the title of many 'omnibus' bills concluded."

It cannot be contended that any such thing was attempted here.

The county also contends that the Act of 1941 violates the second portion of article III, sec. 3, of the Constitution of Pennsylvania, which requires that the subject of the act be clearly expressed in its title. The title to an act of assembly must fairly give notice of the contemplated legislation so as reasonably to lead to the inquiry as to what is contained in the body of the bill, as was said in Fedorowicz v. Brobst, 254 Pa. 338, 341. The purpose of this constitutional provision is to give information to the members of the legislature, or others interested, by the title of the bill, of the contemplated legislation, and thereby to prevent the passage of unknown and alien subjects which may be coiled up in the folds of the bill. Certainly the extension of the period of redemption is not an "unknown and alien subject" to a bill entitled "An act providing for the redemption of real property. . . ."

In this connection it will be observed that under the provisions of the Act of April 29, 1844, P. L. 486, the redemption period was fixed at two years. On July 8, 1885, by the Act of July 8, 1885, P. L. 268, sec. 3, the legislature provided that the right of redemption should be extended to a period of five years after sale. No more notice that the period was to be extended was contained in the title to that act than is contained in the title to the act now under consideration. The title of the Act of 1885 read as follows: "An act relative to the purchase of lands by county commissioners at sales thereof for arrearages of taxes." The word "redemption" was nowhere used in the title, and yet it

has not been doubted that the period of redemption was increased to five years by the Act of 1885. Likewise, the Act of June 4, 1901, P. L. 364, in effect changed the period of redemption, although the title did not indicate that such change was to be made.

As was said in Provident Life & Trust Co. v. Hammond, 230 Pa. 407, 414:

"It was not the intention to interfere with or prevent the legislature from freely enacting proper legislation, but the purpose was to prevent fraud and deception by requiring the title of the bill to disclose fully and clearly its subject so that all interested parties could be heard for and against the proposed legislation if they desired."

As we view the matter, anyone interested in the action of the legislature in extending the period of redemption and giving a former owner an absolute right of redemption so long as title remained in the purchasing municipality should certainly have been placed on his guard when he read a title, "Providing for the redemption of real property purchased by political subdivisions at tax sales . . ." In our opinion, the title fairly gives notice of the subject of the act so as reasonably to lead to an inquiry concerning its contents. As was said in Hadley's Appeal, supra:

"Unless a substantive matter, entirely disconnected with the named legislation, is included within the bill, the act does not fall within the constitutional inhibitions."

Finally it is contended that the county commissioners did not have such title at the time of the offer by the former owner as would permit redemption. It is argued that the commissioners had agreed to sell the premises to Noon for a sum greater than the redemption price and had been paid the purchase money before the former owner offered to redeem. This contention is not in accordance with the facts as we find them on the record but, even if it were, we cannot agree with the

contention. It is, of course, fundamental law that a purchaser under a binding agreement to purchase real estate acquires such title as will substantiate an action for specific performance of contract. However, the parties to a contract are bound to know the law of the Commonwealth as it was at the time they made their contract. In February 1944 the Act of 1941, now under consideration, had been in effect for almost three years. As we have found, this act gave the former owner an absolute right of redemption until the county parted with title. Noon was presumed to know at the time he entered into his contract with the commissioners that the former owner might at any time up until the final passage of title to Noon offer the county a redemption and, therefore, prevent the county commissioners from fulfilling their bargain with him. To that extent the contract between the commissioners and Noon, the prospective purchaser, was a conditional contract. If the former owner had an absolute right to redemption at the time of the agreement between Noon and the commissioners, as we believe he had, no action of the commissioners could possibly destroy that right except the action permitted them by the Act of 1941, that is, a divestiture of title.

We therefore enter the following

### Decree

And now, October 11, 1944, after due consideration, the objection of the liquidating trustees of the Citizens National Bank of Windber, former owners, to the petition of the County Commissioners of Cambria County to sell 25 acres of surface land in Adams Township, assessed in the name of G. E. Faust, is sustained, and the prayer of said petition is refused, and the county commissioners are directed to permit the redemption of said land by said former owner upon the payment of taxes, penalties, interest, and costs in full.