528 A.2d 125

**J. PIVIROTTO, Appellee,**

v.

**CITY OF PITTSBURGH, Appellant.**

Supreme Court of Pennsylvania.

Argued March 9, 1987.

Decided June 22, 1987.

D.R. Pellegrini, City Sol., John George Shorall, II, Asst. City Sol., Pittsburgh, for appellant.

Barbara Axelrod, Divisional Deputy, Office of the City Solicitor, Philadelphia, for amicus curiae: for the City of Philadelphia.

Stephen Israel, Marianna E. Specter, Pittsburgh, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

We granted the petition for allowance of appeal of the City of Pittsburgh (hereinafter, "the city") to determine whether the city improperly failed to give notice to appellee of its intent to demolish a building the city had sold to appellee in a tax sale fourteen months prior to the demolition.

The real property which is the subject of this dispute was a dwelling located at 5741 Pierce Street in the city. On September 12, 1977, the property was sold for taxes by the city treasurer to appellee. There was in effect, at that time, a period of one year after the sale for redemption by the record owner. There was no redemption, and the property was conveyed to appellee by Treasurer Deed dated and recorded October 27, 1978.[1]

Approximately one year prior to the sale, on September 7, 1976, employees of the city's Bureau of Building Inspection examined the Pierce Street dwelling and found several violations of the city's housing code. In May of 1978, several months after appellee bid for and paid the upset price on the property, the city again inspected the building. Upon finding building code violations, the inspectors condemned it. Notice of condemnation was sent by the bureau to the record owners whose identities were ascertained by inspection of records in the Allegheny County Recorder of Deeds office. No notice was sent to appellee. Although there was testimony that a notice of condemnation was posted on the property in May, appellee testified he saw no such notice when he visited the property during the same

1. We are disappointed in the briefs of counsel as regards the tax sale procedure in effect at the time of the events in question. The only description of the procedures for conveyancing properties sold at tax sales contained in this record was provided by appellee's testimony that he has purchased approximately 50 homes at treasurer's sales, 13 of them at the September 12, 1977 sale, and that deeds are generally received within 6–7 months of the sale.

month.[2]

The record owners, of course, took no action regarding the housing code violations, so the city solicited bids for demolition of the property on October 2, 1978. A bid was accepted on October 26, and demolition commenced sometime around November 18, 1978. A neighbor notified appellee of the demolition.

Curiously, the record shows that officials in the city's Bureau of Building Inspection, who were responsible for condemnation and demolition, had ready access to the fact that the Pierce Street property was the subject of a sale for delinquent taxes, because the treasurer's office customarily sends lists of properties sold at the treasurer's sale to the bureau. The notice to the bureau is accompanied by a request for advice whether any liens or condemnation or demolition notices are pending against the property. Outstanding liens are then assessed against the purchaser, who is expected to remit payment within 60 days. Properties which have been condemned must be promptly repaired by the purchaser. Although the list does not contain the names of the purchasers, it does indicate which properties were sold, and, thus, which are about to be conveyed to new owners.

Appellee brought an action in the Court of Common Pleas of Allegheny County for negligent demolition. Emphasizing the bureau's easy access to the treasurer's records showing properties sold for delinquent taxes, the trial court awarded appellee $10,780, plus delay damages of ten percent. Commonwealth Court affirmed, 93 Pa.Cmwlth. 563, 502 A.2d 747.

The question presented is whether the city followed procedures adequate to afford all those having an interest in the property an opportunity to protect that interest. The notice to owners required by the fire prevention laws con-

2. Appellee testified that it was his practice not to enter premises acquired at treasurer's sales because he did "not want to stimulate anyone to redeem the property." Nevertheless, he did periodically pass by the property and, in May of 1978, while the property was vacant, he entered the premises with an appraiser.

tained in the second class city code is set forth at 53 P.S. § 25094.[3] The term "owner" as used in § 25094 is not specifically defined.

■ Appellee argues that as the successful bidder at the tax sale, he has an ownership interest, to wit equitable title, and, thus, he has a legally protected property interest which entitles him to actual notice from the city of condemnation and demolition. We agree.

The doctrine of equitable conversion arose out of the power of the chancellor to compel the performance which was intended by the parties. This power was grounded in the principle that equity treats as done those things that should be done, *quod fieri debet facile praesumitur.* It is precisely because of the equitable remedy of specific performance that fundamental real property rights are created in a purchaser of realty prior to delivery of the deed. *Kerr v. Day,* 14 Pa. 112 (1850). The principles applicable to sales of real property between private parties are equally applicable to sales for delinquent taxes. Once appellee's successful bid was accepted, the parties, to wit the city and appellee-purchaser, intended that the sale should be perfected subject only to the record owner's redemption as provided by law. Failing redemption by the record owner during the statutory period, the successful bidder could certainly compel conveyance by the city treasurer. Thus, the doctrine of equitable conversion is applicable to a sale for

3. § 25094 of the second class city code provides in pertinent part as follows:

All orders [respecting inspection of buildings regarding prevention of fire] herein provided or issued by the Department of Public Safety, and directed to the owner, shall be served by pasting a copy or copies in a conspicuous place on the building referred to in such order, and by prepaid mailing of a copy thereof, on the same day, to the owner or owners whose address is known or ascertained by the said department. If, after a reasonably diligent search, the address or addresses of the owner or owners cannot be ascertained, said orders shall, in addition to posting, be served upon the agent, or the tenant or tenants, or other responsible occupant of said building, if any. All orders directed to the occupant shall be served in the manner above provided, and, in addition thereto, by handing a copy thereof to the occupant of the premises.

53 P.S. § 25094.

delinquent taxes and its operation conveys equitable title to the purchaser. Defeasible that title is; but, barring redemption by the record owner during the statutory period, the successful bidder at the tax sale is entitled to compel conveyance by treasurer deed, and thus, he is the equitable owner.

Our conclusion is buttressed by the city's expectation that purchasers at tax sales make necessary repairs, thus discharging ownership responsibilities, in order to bring buildings into compliance with the housing code, supra at p. 3. There is also support for our conclusion in statutory recognition that a purchaser at a tax sale has an insurable interest, and may use the property to produce income.[4] See also, *City of Philadelphia v. King Kai Chin*, 354 Pa.Super. 115, 119, 511 A.2d 214, 216 (1986) where Superior Court held that a redeeming owner may properly be required to pay expenses incurred by the purchaser to make the property habitable. In rejecting the record owner's argument that the purchaser could only recover costs necessary to keep the property in the condition prevailing at the time of the tax sale, Superior Court noted that such a restriction would necessitate that dilapidated, uninhabitable buildings remain in that condition, and "ignore the interests of the parties, the municipality and the public." Implicit in this holding by Superior Court is recognition that the purchaser at a tax sale does acquire an ownership interest in the premises, a principle we now affirm and proclaim as law.

In rejecting the applicability of equitable conversion to tax sales, Commonwealth Court relied upon this Court's

---

**4.** 53 P.S. § 7293 provides, inter alia:

(a) The owner of any property sold under a tax or municipal claim, or his assignees, or any party whose lien or estate has been discharged thereby, may, except as provided in subsection (c) of this section, redeem the same at any time within one year from the date of the acknowledgement of the sheriff's deed therefor, upon payment of the amount bid at such sale ... the insurance upon the property, and other charges and necessary expenses of the property, actually paid, less rents or other income therefrom, and a sum equal to interest at the rate of ten per centum per annum thereon, from the time of each of such payments.

opinion in *Gault's Appeal,* 33 Pa. 94 (1859). There the interest of the "legal" owner was defined as follows.

> We hold him to be an owner within the statute who is such when he offers to redeem. The sale left in the former owner an equity of redemption at the least, and that might be conveyed like any other estate, and the grantee took it with all the rights and capacities of the grantor. He is therefore the "owner" who holds the title at the moment of redemption.

*Id.,* 33 Pa. at 98. This language is not inconsistent with our holding today. It merely recognizes that, until the period for redemption of the property expires, the record owner has "legal" title and his "equity of redemption" is an interest that may be conveyed to a willing buyer. This interest in the original owner is in no way inconsistent with an equitable ownership interest in the tax sale purchaser, whose equitable interest may not be divested by governmental action without notice.

■ Having determined that appellee was entitled to notice prior to demolition of premises he purchased at the tax sale, the question then remaining is whether notice to appellee by posting was sufficient. We conclude that it was not.

In *Gault's Appeal,* supra, Justice Woodward wrote for the Court:

> The right of the government to authorize the seizure and sale of land without notice to the owner, was seriously doubted, and sometimes stoutly denied, in the early history of tax sales in Pennsylvania; and the only ground on which it can be maintained, is the absolute sovereignty of the state in the exercise of its taxing power.
>
> But it is a severe exercise of power. *To divest ownership, without personal notice, and without direct compensation, is the instance in which a constitutional government approaches most near to an unrestrained tyranny.*

*Id.,* 33 Pa. at 97–98. (Emphasis supplied.) More recently, in *Tracy v. County of Chester Tax Claim Bureau,* 507 Pa.

288, 489 A.2d 1334 (1985), we held that where an owner's identity was reasonably ascertainable, actual notice of a pending tax sale was required. "A government body is not required to make 'extraordinary efforts' to discover the identity and address of a person whose property interests are likely to be significantly affected by a tax sale, but only reasonable efforts." *Id.*, 507 Pa. at 296, 489 A.2d at 1338. Although the matter *sub judice* involves a condemnation notice and not a tax sale notice, both situations involve governmental taking of private property and the same safeguards apply. Thus, instantly the city was required to expend reasonable efforts to ascertain the identity of the purchaser of the Pierce Street property at the tax sale. This was not done.

The record demonstrates clearly that the office of the city treasurer maintained a list of all properties sold at tax sales and actually forwarded a list of properties sold to the Bureau of Building Inspection to ascertain whether any condemnation notices were already pending against the property. Having determined that there were no outstanding condemnation notices pending against the Pierce Street property on the date of the sale, the list of properties was filed somewhere in the bureau and promptly forgotten. No further inquiry was made by the bureau as the status of the property changed. The trial court aptly noted that "the reasons underlying housing code violations are often the same as those placing the property on the Treasurer's Sale list; that is, lack of money to maintain the premises." Slip. op. at 6. City officials may expect that properties with housing code violations might also be subject to sales for tax delinquencies, and that persons in addition to the owners indicated in the deed registry might have an ownership interest in dilapidated properties. Particularly in view of the fact that the list of properties sold at the yearly tax sales is routinely forwarded to the Bureau of Building Inspection, the information is readily accessible to that bureau. It is not unreasonable to expect the bureau to ascertain whether properties have been sold, and then to make contact with the city treasurer's office to ascertain

the identity of the purchaser at the tax sale. Failing this, the city is liable to purchasers at tax sales when properties sold by the city are demolished without actual notice to the purchaser.

■ As noted supra, the verdict for appellee included an award of delay damages under Pa.R.C.P. 238.[5] The city argues that this award was illegal because it conflicts with Section 333 of the Act of October 5, 1980, P.L. 693, No. 142 which provides, in pertinent part:

Actions under Subchapter C of Chapter 85 (relating to actions against local parties) of Title 42 of the Pennsylvania Consolidated Statutes for claims against a local agency may be brought in and only in a county in which the local agency is located or in which the cause of action arose or where a transaction or occurrence took place out of which the cause of action arose. *No interest shall accrue in any such action prior to any entry of judgment.*

5. Pa.R.C.P. 238 provides in relevant part as follows:
Rule 238. Award of Damages for Delay in an Action for Bodily Injury, Death or Property Damage
(a) Except as provided in subdivision (e), in an action seeking monetary relief for ... property damage, ... the court ... shall
(1) add to the amount of compensatory damages in the ... court's decision in a nonjury trial, damages for delay at ten (10) percent per annum, not compounded, which shall become part of the ... decision;
(2) compute the damages for delay from the date the plaintiff filed the initial complaint in the action or from a date one year after the accrual of the cause of action, whichever is later, up to the date of the ... decision.

・　　・　　・　　・　　・

(e) If a defendant at any time prior to trial makes a written offer of settlement in a specified sum with prompt cash payment to the plaintiff, and continues that offer in effect until commencement of trial, but the offer is not accepted and the plaintiff does not recover by ... decision, exclusive of damages for delay, more than 125 percent of the offer, the court ... shall not award damages for delay for the period after the date the offer was made.

・　　・　　・　　・

(g) This rule shall not apply to
(1) eminent domain proceedings:
(2) pending actions in which damages for delay are allowable in the absence of this rule.

42 Pa.C.S.A. § 7101 to § 8700 p. 412 (1982) (Emphasis supplied).[6]

We have already said that Pa.R.C.P. 238, providing for pre-judgment interest for delay, is procedural in nature, *Laudenberger v. Port Auth. of Allegheny Cty.*, 496 Pa. 52, 436 A.2d 147 (1981), *appeal dismissed*, 456 U.S. 940, 102 S.Ct. 2002, 72 L.Ed.2d 462 (1982). This portion of *Laudenberger* remains viable, even after our recent re-evaluation of *Laudenberger* in *Craig v. Magee Memorial Rehabilitation Center*, 512 Pa. 60, 515 A.2d 1350 (1986). The power to promulgate procedural rules governing business in the courts rests exclusively in the judiciary, PA. CONST. Art. V, § 10(c). The same constitutional provision suspends the operation of statutes which are inconsistent with procedural rules promulgated by this Court. Thus, Section 333 cannot save the city from the requirement to pay delay damages under Rule 238, and we reject the argument that the city is immune from payment of delay damages.

In *Craig*, supra, we ruled that a fact finder must consider all pertinent facts respecting both parties' responsibility for delay in assessing an award of delay damages, and we prescribed a manner of proceeding to determine the same. Our ruling was prospective, except in those cases pending on appeal where the issue has been preserved. As the city's legal argument on the statute was not sufficient to preserve a challenge to the court's imposition of delay damages on any other theory, there is no reason to remand for further proceedings on this question.

The order of Commonwealth Court is affirmed.

LARSEN, J., files a concurring opinion.

HUTCHINSON, J., files a concurring and dissenting opinion.

NIX, C.J., files a dissenting opinion.

6. The City of Philadelphia filed an amicus brief on this issue.

LARSEN, Justice, concurring.

I agree with Justice Hutchinson that there is no need to redefine the law of property in Pennsylvania to declare a purchaser of property an "equitable owner" who is entitled to notice as an "owner" under the second class city code. 53 P.S. § 25094. It suffices to state that appellee, as purchaser of property at a tax sale awaiting expiration of the redemption period, had a substantial, legally protected property interest in the demolished property sufficient to entitle him, under the due process clause, to notice reasonably calculated to apprise him of the pending demolition. *Mennonite Board of Missions v. Adams*, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983); *First Pennsylvania Bank v. Lancaster County Tax Claim Bureau*, 504 Pa. 179, 470 A.2d 938 (1983); *Tracy v. County of Chester Tax Claim Bureau*, 507 Pa. 288, 489 A.2d 1334 (1985).

I further agree with Justice Hutchinson and the majority that the notice of demolition given in this case was not, under the circumstances, reasonably calculated to apprise interested parties of the pendancy of the action. When one branch or bureau of the city sells tax delinquent property to a purchaser, and another branch or bureau of the city demolishes that property some fourteen months after the sale without actual notice to that purchaser, it cannot be said that the city has taken reasonable steps calculated to apprise that purchaser, whose identity is readily ascertainable, of the demolition. The left hand should know what the right hand does.

The demolition without actual notice to appellee is particularly onerous in the instant case because, as Judge Craig observes in his opinion for the Commonwealth Court, appellee was *the record owner* of the demolished property as of October 27, 1978. On that date, some three weeks prior to initiation of the demolition, the city treasurer issued a deed for the property to appellee *and recorded it* in the Treasurer's Deed Book, following expiration of the redemption period. A simple check of the recorded deeds on the eve of

demolition would have shown appellee to be the record owner.

Chief Justice Nix believes that the Court's decision today "has gratuitously engrafted a further impediment" upon a legitimate government function. However, I cannot subscribe to the theory that the rather minimal additional steps required today (by the due process clause) "places an unreasonable requirement upon municipal government in the discharge of vital service," for it is *equally vital* that government take care not to unnecessarily and unfairly infringe upon one's constitutional right to own and enjoy property, particularly where the infringement means total destruction of that property.

On the issue of pre-judgment delay damages under Pa.R. Civ.Pro. Rule 238, I find it unnecessary to rule on the constitutionality of Section 333 (the preamble) of the Political Subdivision Tort Claims Act, (Act of October 5, 1980, P.L. 693, No. 142), preamble to 42 Pa.C.S.A. § 8541–64, Subchapter C. (The majority declares section 333 an unconstitutional infringement upon this Court's rule making powers.) Instead, I would adopt Judge Craig's reasoning that delay damages do not constitute interest on the award but are, rather, an actual component of the plaintiff's entitlement designed to make plaintiff whole. As we stated in *Laudenberger v. Port Authority of Allegheny County,* 496 Pa. 52, 66, 436 A.2d 147, 154–55 (1981), *appeal dismissed sub nom. Bucheit v. Laudenberger,* 456 U.S. 940, 102 S.Ct. 2002, 72 L.Ed.2d 462 (1982):

> Although the award for delay of time may be "in the nature of interest," in reality, it is merely an extension of the compensatory damages necessary to make a plaintiff whole. Damages have been defined as "the sum of money which the law awards or imposes as pecuniary compensation, recompense, or satisfaction for an injury done or a wrong sustained as a consequence either of a breach of a contractual obligation or a tortious act." 22 Am.Jur.2d, Damages § 1.

Accordingly, I agree with the Commonwealth Court's interpretation that the cited preamble, section 333, which prohibits the award of interest, does not preclude the award of delay damages under Rule 238.

For the foregoing reasons, I join the majority's affirmance of the order of the Commonwealth Court.

HUTCHINSON, Justice, concurring and dissenting.

I concur in part and dissent in part. I agree with the majority that appellee was entitled to notice prior to demolition of the premises he purchased at the tax sale. I believe, however, that this right to notice is based on the due process clause of the Fourteenth Amendment rather than equitable conversion. Under Pennsylvania law, equitable title cannot transfer while the original owner still has a right of redemption. The analysis of equitable conversion is unnecessary to the result and may change or confuse the doctrine of equitable conversion as it exists in this Commonwealth. Furthermore, I must dissent from the majority's reaffirmance of Rule 238 of our Rules of Civil Procedure. Pa.R.C.P. 238. Such a rule providing for pre-judgment interest for delay is substantive in nature and outside the scope of the rulemaking authority conferred on this Court by the Pennsylvania Constitution.

## I

Under the due process clause of the Fourteenth Amendment, a state is required to give reasonable notice before taking an action which will affect an interest in life, liberty, or property. *Mennonite Board of Missions v. Adams,* 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983); *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). The United States Supreme Court describes this notice as that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane,* 339 U.S. at 314, 70 S.Ct. at 657. In *First Pennsylvania Bank v. Lancaster*

*County Tax Claim Bureau,* 504 Pa. 179, 470 A.2d 938 (1983), this Court, relying on *Mennonite Board* and *Mullane,* held that the notice provision of the Real Estate Tax Sale Law, Act of July 7, 1947, P.L. 1368, No. 542, *as amended,* 72 P.S. §§ 5860.101–5860.803, was unconstitutional because it required that notice of the proposed sale be mailed only to the record owner of the property. We reasoned that this section failed to provide adequate notice to other parties with an interest in the property, and, therefore, violated the due process clause. *See also Tracy v. County of Chester, Tax Claim Bureau,* 507 Pa. 288, 489 A.2d 1334 (1985).

By interpreting the term "owner" in Section 25094 of the Second Class City Code as meaning only the owner of record, I believe that this statute violates the due process clause, since other parties with an interest in the property would not receive adequate notice before it was either condemned or demolished. Indeed, because appellee would become the owner of record barring redemption, his interest was substantial.

It would not have been burdensome for appellant to have mailed notice to appellee in this case. The treasurer's office had sent a list of properties sold at the treasurer's sale to the Bureau of Building Inspection. Thus, the Bureau was aware that the property it intended to demolish had been sold at a tax sale. Through a reasonable effort, appellant could have obtained the name and address of the purchaser, appellee, and mailed him notice of the proposed demolition. Under these circumstances, that notice was required by the due process clause of the Fourteenth Amendment to the United States Constitution.

While I believe that due process requires notice to appellee, I do not believe that he acquired equitable title in the property until the opportunity for redemption had passed. Under well established Pennsylvania property law, equitable conversion does not occur until the owner's title has been divested. A treasurer's sale does not pass title to the purchasers until the redemption period has passed.

The majority's reliance on *Gault's Appeal*, 33 Pa. 94 (1859), is misplaced. The precise holding in *Gault* is only that a taxpayer's right of redemption attaches to the interest a third party acquires from the purchaser at a tax sale. There is confusing language in *Gault*, on some of which the majority relies. That language relates only to the statute applied in that case. Moreover, there is other language in *Gault* which seems supportive of the view that a purchaser under a statute that provides a right of redemption does not obtain equitable title. The Court stated:

> *for the benefit of his creditors,* we hold that a sheriff's vendee, before deed, acquires an inceptive interest, which their judgments will bind, if the sale be followed up and perfected: 4 *Casey* 170. A purchaser of unseated land, at treasurer's sale, acquires no rights, whatever may be his liability to creditors, until he obtains his deed.

*Id.*, 33 Pa. at 99. Less than ten years later, any confusion was resolved when we held in a case of tax sale of unseated land:

> The uniform understanding and belief of the profession and people of this Commonwealth, for over half a century, has been, that a purchaser of unseated lands for taxes, when he receives his deed, takes but an inchoate or inceptive title, which requires the lapse of two years from the date of sale to ripen into an absolute title. This it will do if the land be not redeemed in the mean time. The only certain interest the buyer has up to that time, by virtue of his purchase, is in the money paid, and 25 per cent. on that amount on redemption.
>
> He is not invested with any title to the land whatever, because the owner's title is not divested: 10 Watts 412; 6 W. & S. 509; 3 Casey 154; 9 Id. 98.

*Shalemiller v. McCarty*, 55 Pa. 186, 188 (1867).[1]  *See also Olshefskie v. Budock*, 41 Pa. D & C 373 (1941).

---

**1.** It should be noted that Chief Justice Woodward, the author of the majority opinion in *Gault's Appeal*, joined Justice Thompson's majority opinion in *Shalemiller*. Justice Thompson also joined the majority opinion in *Gault's Appeal*. Based on the language in *Shalemiller*, it would appear that both Justices thought that the two opinions were

For these reasons, I believe the majority's analysis may confuse our law of equitable conversion. Since this reasoning is unnecessary to the result and because *stare decisis* appears with particular strength in the law of real property, I cannot join the majority. Nevertheless, I believe the majority's result and its rationale on the due process issue are correct and I, therefore, concur in its affirmance of the judgment for appellee for the damages he suffered by demolition, without notice, of property in which he had a substantial interest.

## II

I must, however, dissent again from the award of delay damages under now suspended Pa.R.C.P. 238. That rule was substantive in nature—not procedural. *E.g., Craig v. Magee Memorial Rehabilitation Center*, 512 Pa. 60, 515 A.2d 1350 (1986) (Hutchinson, J. concurring). As proposed, it was outside the scope of our rulemaking power under Article V, § 10(c) of the Pennsylvania Constitution. That Section states: "The Supreme Court shall have the power to prescribe general rules governing the practice, procedure and the conduct of all courts. . . ." Pa. Const. Art. 5, § 10(c). Rule 238 did not deal with "practice," "procedure," or "the conduct of the courts." It provided substantive benefits to one party and penalized the other.

A general rule on delay damages is legislative in nature and should be left to the Legislature. The judiciary remains free to give substantive relief for unwarranted dilatory tactics on a case specific basis. By so dealing with the problem under the common law method of case by case analysis, the inequities that have developed as a result of this rule can be avoided. *See, e.g., Craig v. Magee Memorial Rehabilitation Center, supra,* (McDermott, J. for the majority); *Laudenberger v. Port Authority of Allegheny,* 496 Pa. 52, 436 A.2d 147 (1981) (Roberts, J., dissenting).

consistent. I recognize the distinction between *Shalemiller,* which involved a tax sale of unseated lands, and this case, in which the property was seated. However, I think that distinction is immaterial to the analysis.

I, therefore, concur with the majority's affirmance of the damage award, but dissent from its approval of pre-judgment delay damages pursuant to Pa.R.C.P. 238.

NIX, Chief Justice, dissenting.

While I agree with the majority's conclusion that appellee had an interest sufficient to entitle him to notice of the proposed demolition of the property, I cannot agree that the posting of the property was not sufficient to meet that requirement. The majority concludes that the information of appellee's interest was reasonably ascertainable because "officials in the city's Bureau of Building Inspection ... had ready access" to a list of properties sold at treasurer's sale. This added layer that is being placed upon the present procedure, designed to remove structures which have deteriorated to a point that they pose a hazard to the community, is, in my judgment, unreasonable as well as unnecessary.

Most purchasers who acquire property interests in this manner are individuals or entities involved in commercial ventures and are sophisticated in real estate matters. Knowing the condition of the acquired property, the purchasers, in these instances, are undoubtedly aware of the possibility of condemnation, and it is their duty to promptly make repairs. This obligation would clearly encompass the expectation that those purchasers will be aware of any notices posted on that property. Indeed the purchaser in this case testified that he did visit the site during the period when the property was alleged to have been posted. Thus, the issue presented under these facts was not the fairness of the notice by posting but whether the city had, in fact, posted this property.[1] The majority today has gratuitously engrafted a further impediment upon a process which is designed to provide municipal government with a workable tool to combat urban blight, the rodent and insect infesta-

---

1. Appellee testified that he viewed the property periodically and that in May, 1978, during the period when the city states the property was posted, he entered the premises with an appraiser. He denied at any time seeing notice of proposed condemnation.

tion that it occasions, and the potential for injury that it creates.

It is my judgment that the majority's holding today places an unreasonable requirement upon municipal government in the discharge of a vital service for the protection of the public. I am therefore constrained to dissent.