## Richardson v. Matika

*Donald R. McKay,* for plaintiff.
*John R. Seltzer,* for defendant.

ACKER, *P.J.,* November 13, 1987—We have for consideration defendant's motion for post-trial relief in the nature of a request to reduce a verdict in favor of plaintiff of $150,000 by deducting $65,880 received from a collateral source. We also have plaintiff's petition for award of delay damages under Pa. R.C.P. 238 for resolution.

By stipulation defendant admitted sole and complete liability for the accident. It was further stipulated that plaintiff's hospital, medical and drug expenses for treatment as a result of the accident is in the approximate amount of $10,000 and that that amount has already been paid under the Motor Vehicle Financial Responsibility Law by plaintiff's own no-fault carrier. Therefore, no claim was made for medical bills incurred to date. It was further agreed that any medical bills hereafter incurred by plaintiff are the responsibility of defendant.

The jury returned a general verdict in favor of plaintiff in the amount of $150,000. It also answered a special interrogatory that $100,000 of the total verdict was attributable to the loss of future earning capacity. Defendant, Joseph Matika, then filed this motion for post-trial relief requesting that the court mold a verdict by deducting the amount of a monthly disability pension plan payment to plaintiff's age 65 of $65,880 from the future wage loss of $100,000 leaving a verdict of $84,120.

Plaintiff opposes this remedy citing the collateral source rule. In addition, the plaintiff petitioned for an award of delay damages under Pennsylvania Rule of Civil Procedure 238 which the defendant opposes upon the authority of *Craig v. Magee Memorial Rehabilitation Center,* 512 Pa. 60, 515 A.2d 1350 (1986).

At a meeting with counsel of August 7, 1987, the issues were limited. The testimony of plaintiff, William A. Richardson, was required to be transcribed plus the colloquy in chambers during the course of the trial as to how collateral source evidence would be treated. By agreement prior to trial collateral source evidence was withheld from the jury.

Plaintiff filed a motion to consider after-discovered evidence. This motion involved a letter of Sharon Steel Corporation of August 3, 1987, to all of its company pensioners by Phillip A. Smalley Jr., senior vice president of human resources of Sharon Steel. Defendant filed an answer. The matter came before the court for receipt of such evidence as the parties might desire to establish their contentions. It resulted in a stipulation by the parties through their attorneys that although defendant objected to the materiality of the letter, it was agreed that the letter's author need not be present. We rule the letter to be material and admit it into evidence.

Upon these facts and such others as will be recited in the individual consideration of the two issues of collateral source and the effect of *Craig, supra,* this matter must be determined.

I

*Is the defendant entitled to a reduction in the verdict to the amount of $84,120 or any other amount as a result of collateral source payments made to the plaintiff by his employer, Sharon Steel Corporation?*

Plaintiff is 53 years of age and lives on a 210-acre farm. He has a high school education and has spent most of his adult life working for Sharon Steel commencing in 1952. He served continuously from

1952 to his last working day of March 1, 1986, with the exception of three years in the military service during 1956, 1957, and 1958. Plaintiff's wife became deceased in August 1986. Plaintiff himself has suffered from meningitis and was out of work part of 1984 and 1985. Thereafter, he returned to his previous job and was able to perform satisfactorily. He has worked at Sharon Steel for 33 years.

Plaintiff was required to go on disability retirement with Sharon Steel on July 1, 1987, because the doctor would not certify defendant to return to work. Under the Sharon Steel rules if an employee has 20 years of service, he is entitled to two years' disability benefit. Plaintiff would qualify, but it is necessary that a doctor certify that he will be able physically to return to work the second year or he is not entitled to those pension benefits. Therefore, plaintiff really had no option but to take disability pension. A competent doctor testified at trial that he would never go back to his previous employment.

In March 1986 plaintiff received an hourly rate of $12.46, being $498.40 for a 40-hour week, or $25,917 a year. In addition, he was entitled to certain bonuses based on production. In that plaintiff worked in the laboratory and not in production, a formula was applied for him or other such employees. In addition, plaintiff received shift differential and premium time consisting of additional monies for Sundays and holidays.

In 1985 plaintiff earned $605 per week or $31,460 per year. In the nine weeks that he worked in 1986, he earned $1,075.50 per week for a total of $9,679.50. As a result of the accident, he lost his cumulative vacation of five weeks valued at $621 per week or $3,105.

Plaintiff was off work as a result of this accident from March 1, 1986, to the date of the trial, July 15,

1987, for a period of 70 and one-half weeks. At $625 per week, that is a loss of $44,062.50 plus a loss of a special payment of $7,126. Therefore, he had an actual loss of $51,188.50 down to the time of trial.

In addition, defendant could have worked to age 65. If Sharon Steel remains solvent it will pay the plaintiff $488 per month for a total of 135 months to plaintiff's age 65. This $65,880 is a figure which defendant requests the verdict to be reduced by with a remaining verdict of $84,120.

The letter which plaintiff asks the court to consider as after-discovered evidence is from Phillip A. Smalley Jr., human resources, Sharon Steel Corporation, of August 3, 1987, addressed to all company pensioners including plaintiff.

The first question addressed in the letter is, "Is our plan in trouble?" The answer is, "Unless the company is successful in working out an arrangement with a Pension Benefit Guaranty Corporation and Internal Revenue, yes, the plan is in trouble; but thus far, we have avoided a termination." Therefore, to reduce the defendant's verdict by the expectation that Sharon Steel will continue to operate sufficiently profitable when it's already in Chapter 11 for an additional 11¼ years is nothing more than guess and conjecture and grossly unfair to plaintiff.

To comply with defendant's motion would be to be in direct violation of the "collateral source rule." That rule has been described as "[t]he judicial refusal to credit to the benefit of the wrongdoer money or services received in reparations of the injury caused which emanate from sources other than the wrongdoer." *Kagarise v. Shover*, 218 Pa. Super. 287, 275 A.2d 855 (1971). *Kagarise* was cited as authority in *Trump v. Capek*, 267 Pa. Super. 355, 406 A.2d 1079 (1979). There it was held that a plaintiff who had been injured in an automobile accident and had

received payment under a government pension plan was so prejudiced by the trial judge's instructions to the jury to disregard such evidence that it failed to protect plaintiff's rights adequately and a new trial was awarded.

*Leeper v. United States,* 756 F.2d 300 (3d Cir. 1985) applies the collateral source rule to allow the victim of a tort to recover from damages caused by a tortfeasor regardless of compensation received from other independent or collateral sources. It cites *Kagarise, supra,* for the principle that a tort victim can recover lost earnings where there has been an actual loss of income or an employment benefit. It holds further that the collateral source rule allows the victim of a tort to recover the damages caused by the tortfeasor regardless of compensation received from other independent or "collateral sources."

By analogy evidence of payment of Workmen's Compensation is inadmissible. *Boudwin v. Yellow Cab Company,* 410 Pa. 31, 188 A.2d 259 (1963). Further, injuries are not diminished by receipt of payments from a plaintiff's employer on a voluntary basis. *Massman v. City of Philadelphia,* 430 Pa. 99, 241 A.2d 921 (1968). *Beechwoods Flying Service Inc. v. Al Hamilton Contracting Corp.,* 504 Pa. 618, 623, 476 A.2d 350, 352 (1984), held. "[W]e reaffirm our adherence to them (collateral source rules)." It has been stated that "collateral source" rule avoids precluding the claimant from obtaining redress for his or her injury merely because coverage for the injury was provided by some collateral source such as insurance. *Beechwoods Flying Service, supra.* In *Moidel v. Peoples Natural Gas Company,* 397 Pa. 212, 154 A.2d 399 (1959), receipt of $100,000 of insurance money for the loss of a building could not be introduced into evidence for it came from a source other than the wrongdoer and is without rel-

evancy in a suit brought by the injured party against the wrongdoer to recover damages.

Persons injured through the fault of another are entitled to recover suitable damages from the other regardless of payments received by the injured person from sources other than the wrongdoer. Amounts received for Workmen's Compensation could not be properly submitted to the jury in *Lobalzo v. Varoli,* 409 Pa. 15, 185 A.2d 557 (1962).

In both *Palandro v. Bollinger,* 409 Pa. 296, 186 A.2d 11 (1962) and *City of Philadelphia v. Philadelphia Rapid Transit Company,* 337 Pa. 1, 10 A.2d 434 (1940), the Supreme Court held that the amount received as disability compensation was irrelevant in determining a plaintiff's damages.

Wherefore, we conclude that disability pension benefits cannot be set off against the $150,000 verdict achieved in this case. We believe to do so would be contrary to the established law, but in addition, would be placing upon plaintiff a burden unwarranted either by law or fact. That is, that Sharon Steel now in Chapter 11 bankruptcy will become healthy and continue in operation until plaintiff has obtained the age of 65. There is no reason or logic why the innocent party, as opposed to the wrongdoer should have to suffer the uncertainties of the corporate existence of Sharon Steel when plaintiff has no opportunity or right to control his own fate.

Wherefore, we conclude that the verdict not be reduced as requested by defendant.

## II

*Should the plaintiff's petition for award of delay damages under Pa. R.C.P. 238 be awarded?*

By stipulation it was agreed that neither plaintiff nor defendant did anything to cause any delay of the

case and that the time from the filing of the complaint to the verdict was but seven months and eight days. Further, it was stipulated that there was no delay between the filing of the complaint and the verdict other than that which is required by rules of civil procedure and local rules requiring 60 days to close discovery. It is stipulated that the figures as set forth in plaintiff's petition for delay damages are correct. Those figures are that defendant's insurance carrier paid plaintiff for the damage to his automobile, being approximately $2,500 shortly after the accident. The motorist never denied liability or implied that comparative negligence would reduce the value of the case, and ultimately stipulated to sole liability for trial.

On October 3, 1986, plaintiff's counsel demanded the policy limits of $100,000 which was rejected by motorist's letter of October 21, 1986. Plaintiff's counsel then wrote to motorists on December 9, 1986, offering to settle within the limits of the policy stating that he would be willing to recommend that the company be permitted to save a small amount on policy limits in consideration for an early settlement. On December 15, 1986, motorists offered $35,000. This was the only offer ever made. The docket shows that plaintiff's complaint was filed on January 7, 1987; defendant served, January 9, 1987; appearance entered, January 27, 1987; defendant's answer filed, February 11, 1987; plaintiff's reply filed February 17, 1987; praecipe for trial list filed March 31, 1987; pretrial held May 29, 1987 and verdict rendered July 15, 1987. A pretrial conference was held in chambers the day of the verdict, being July 15, 1987, when plaintiff's counsel requested delay damages pursuant to Pa. R.C.P. 238 and that the record be preserved for their consideration. The claim is for 10 percent per annum on the

amount of the verdict after the court has finally acted on defendant's petition to mold commencing January 9, 1987, to the verdict on July 15, 1987.

Until *Craig v. Magee Memorial Rehabilitation Center, supra,* decided October 8, 1986, recovery of delay damages was authorized by Pa. R.C.P. 238, 42 Pa.C.S. *Craig, supra,* held that rule 238 was an experiment and that the Supreme Court was going to re-examine the underpinnings of rule 238 as found in *Laudenberger v. Port Authority of Allegheny County,* 496 Pa. 52, 436 A.2d 147 (1981). Doing so, *Craig, supra,* concludes that, "There is no point in contending that a procedural rule may exist that punishes without fault and is yet consistent with due process." The court did not, however, overrule the rationales of *Laudenberger* for it held they "[h]ave vitality of their own in the context of the end sought." It did, however, suspend rule 238 because experience showed that the ends sought run too tight a gauntlet through due process, by denial of a forum to assess fault for the delay sought to be avoided. It states further, "In short, rule 238 has become an uncontestable presumption that all fault lies with a defendant. There are too many reasons why such is not always the case; and what is not always so may not be irrebuttable when a penalty follows." The court then directed that mandatory provisions of rule 238 which assess delay damages against defendant without regard to fault are suspended as of the date of the opinion.

In setting the criteria for determination of entitlement to delay damages, it held that the mere length of time between the starting date and the verdict is not to be the sole criteria. Rather, the factfinder should consider the party's respective responsibilities. In requesting continuances, the parties' compliance with rules of discovery, the respective re-

sponsibilities for delay necessitated by the joinder of additional parties and other pertinent factors, all must be considered.

*Craig, supra,* also concludes, "We do not overrule the rationales of *Laudenberger,* for they have vitality of their own in the context of the ends sought." Whether this means that if there is not fault on the part of defendant, the mere fact that he did not make an appropriate offer in accordance with rule 238 requires assessment of delay damages is unanswered.

Until the Supreme Court promulgates a new rule on delay damages, a trial court must consider whether which, if any, of the parties is responsible for delaying the recovery. *Gallo v. Yamaha Motors Corp.,* 363 Pa. Super. 308, 526 A.2d 359 (1987). It has been stated following *Craig, supra,* the factfinder is obligated to consider the respective responsibilities of the parties presumably charging plaintiff or defendant with various delays in much the same ways that our courts presently conduct Rule 1100 hearings in criminal actions. *Hall v. Brown,* 363 Pa. Super. 415, 526 A.2d 413 (1987). The directions of *Craig, supra,* were repeated in *Pivirotto v. Pittsburgh,* 515 Pa. 246, 528 A.2d 125 (1987) that a factfinder must consider all pertinent facts respecting both parties responsibility for the delay in assessing an award of delay damages.

We learn from cases subsequent to *Craig, supra,* that the mere length of time between the starting date and the verdict is not to be the sole criterion in determining delay damages. Further, that delay damages must be apportioned in the same manner in which a jury apportions liability. *Hughes v. GAF Corp.,* 364 Pa. Super. 311, 528 A.2d 173 (1987). Specific items which a trial court is to look for in de-

termining the assessment of damages for delay under *Craig, supra,* are the parties' respective responsibilities in requesting continuances, the parties' compliance with rules of discovery, the parties' responsibility for delay by joinder of the parties and other pertinent factors. *Bolus v. United Penn Bank,* 363 Pa. Super. 247, 525 A.2d 1215 (1987); *Dale v. B & O Railroad Company,* 359 Pa. Super. 477, 519 A.2d 450 (1986).

In examining all of the criteria in the instant case, it appears that the only fault, if any, of defendant was in offering $35,000 instead of either the policy limits of $100,000 or the verdict amount of $150,000. We know of no case where a plaintiff was denied delay damages or where a defendant was required to pay delay damages under the facts here present. *Craig, supra,* directs that the mandatory provisions of rule 238 which assess damages against defendant without regard to fault be suspended. Rather, the criteria is as recited above in cases decided since *Craig* and specifically in *Craig, supra.*

Concluding that the taking of property without fault is what has been occurring through the application of rule 238, in that there is no fault in this case, there should be no award of delay damages.

## ORDER

And now, November 13, 1987, it is hereby ordered and decreed that the defendant is not entitled to a reduction in the verdict to the amount of $84,120 or any other amount as a result of collateral source payments made to the plaintiff by his employer, Sharon Steel Company, and that plaintiff is not entitled to delay damages.