J-A09007-17

2017 PA Super 251

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| INVESTMENT RESOURCE HOLDING, INC. | |
| Appellant | No. 1142 MDA 2016 |

Appeal from the Judgment of Sentence June 28, 2016
In the Court of Common Pleas of Lebanon County
Criminal Division at No(s): CP-38-SA-0000091-2015

BEFORE:  SHOGAN, J., OTT, J., and STABILE, J.

OPINION BY OTT, J.:                                    **FILED AUGUST 01, 2017**

Investment Resource Holding, Inc. (IRH) appeals from the judgment of sentence imposed on June 28, 2016, in the Court of Common Pleas of Lebanon County finding it guilty of certain summary offenses regarding property it had purchased at judicial sale.  In this timely appeal, IRH raises two issues, both regarding its attempt to rescind its purchase of the subject property.  The claims are: (1) Whether IRH held legal title to the property prior to acknowledgment, delivery and acceptance of the deed, and (2) whether IRH's equitable ownership of the property ended after informing the Tax Claim Bureau it would not accept the deed.  After a thorough review of the submissions by the parties, relevant law, and the certified record, we affirm.

IRH has essentially presented the court with a claim of insufficient evidence, by asserting the Commonwealth failed to prove it owned the subject property. Therefore, IRH contends, it cannot be held culpable for the failure to insure the safety of the property.

> The standard of review for claims of insufficient evidence is well-settled. With respect to such claims, we consider the evidence in the light most favorable to the Commonwealth as verdict winner. In that light, we decide if the evidence and all reasonable inferences from that evidence are sufficient to establish the elements of the offense beyond a reasonable doubt. We keep in mind that it was for the trier of fact to determine the weight of the evidence and the credibility of witnesses. The jury was free to believe all, part or none of the evidence. This Court may not weigh the evidence or substitute its judgment or that of the factfinder.

**Commonwealth v. Devries**, 112 A.3d 663, 667 (Pa. Super. 2015) (citations omitted).

Further, "[t]his Court's standard of review of a nonjury trial is to determine whether the findings of the trial court are supported by competent evidence and whether the trial judge committed error in the application of law." **Commonwealth v. Decker**, 698 A.2d 99, 100 (Pa. Super. 1997).

We quote the factual and procedural history as related by the trial court in its Pa.R.A.P. 1925(a) opinion.

> [IRH] was charged with violations of the City of Lebanon's Codified Ordinances, Property Maintenance Code, for its failure to rectify damages caused by a fire at 519 North 11th Street in the City of Lebanon ("the Property"). [IRH] does not dispute that it did not comply with the directives issued by the City, but claims that it is not the owner of the Property and cannot be held responsible for the violations alleged.

- 2 -

[IRH] was issued five citations at this docket. It was found guilty of four and the magisterial district judge dismissed one. [IRH] appealed to this Court and we conducted a summary appeal hearing on March 17, 2016. After the parties filed post-hearing Briefs addressing the issue of [IRH's] ownership of the Property, we issued an Order on May 2, 2016 in which we found [IRH] guilty of four of the citations and not guilty of one.[1] After Sentencing was conducted on June 28, 2016, [IRH] filed an appeal to which this Opinion is addressed.

On September 8, 2014, the Property was listed for the 2014 Lebanon County Tax Claim Bureau Upset Sale. William Hartman, the incorporator and president of [IRH], attended the sale to purchase the Property on its behalf. Hartman completed a Bidder Registration form and was designated "Bidder No. 1." At registration, Hartman was given a copy of the Conditions of Upset Sale. This document stated that "[t]he Tax Claim Bureau will issue a deed to the purchaser upon confirmation of the sale by the Court of Common Pleas." It also provided: "NO SALES WILL BE CANCELED OR MONEY RETURNED AFTER THE PROPERTY IS STRUCK DOWN BY THE AUCTIONEER." Hartman, acting on [IRH's] behalf, was the winning bidder of the Property. He executed a check in the amount of $5,300.00, and signed the Agreement of Sale and Receipt of Payment for the Property. The Agreement of Sale and Receipt of Payment provided that "THIS SALE IS FINAL AND THE BUYER IS BOUND BY THE TERMS AND CONDITIONS OF THE SALE ATTACHED HERETO." The check issued by Hartman indicated that it was drawn on an account in [IRH's] name with an address of "1912 East Pennsylvania Avenue, Lebanon, PA 17042."

On September 11, 2014, in response to the Motion of the County Solicitor, this Court issued an Order finding that the upset sale had been conducted in accordance with the Pennsylvania Real Estate Tax Sale Law, and the sales were confirmed *nisi*.

---

[1] Specifically, IRH was found guilty of violating one count of failure to comply with BOCA Property/Maintenance Code, LO 19 108.1, and three counts of Dangerous Structure on Premises, LO 19 108.1.5. IRH was sentenced to pay fines and restitution. Two of the citations, LO 19 108.1 and one count of LO 108.1.5, were issued on December 2, 2014. The other two counts of LO 108.1.5 were issued on December 24, 2014 and January 19, 2015.

Pursuant to that Order, the Tax Claim Bureau published a general notice indicating that any exceptions to the sales were required to be filed within thirty days. No objections [sic] were filed and the sale was confirmed absolutely on October 21, 2014. A Tax Claim Bureau Deed, which transferred the Property from the previous owner to [IRH], was prepared and recorded on November 21, 2014.

On December 2, 2014, a fire resulted in extensive damage to the Property. On December 3, 2014, the Tax Claim Bureau forwarded the Deed to [IRH] at the East Pennsylvania Avenue address via certified mail. On December 7, 2014, the Tax Claim Bureau received a letter from an attorney dated December 5, 2014 which indicated that [IRH] had not received the deed and would not accept it or be considered the owner of the Property. The Deed was returned to the Bureau unclaimed as [IRH] had not picked it up. The return indicated that delivery had been attempted on December 4, 2014.

At the hearing, Terry Brown, a City Code Enforcement employee, testified that he had contacted Hartman regarding concerns about the Property's condition prior to the fire after he learned that [IRH] was the new owner. Hartman acknowledged that he had just purchased the Property and was in the process of getting the occupant to move out.

Belinda Spicer, the Deputy Director of the Tax Claim Bureau, testified that she was familiar with Hartman, as he attended the upset sale every year and was a frequent purchaser. She explained that Hartman had called her office the morning after the fire and asked whether the Deed had been mailed out yet; however, she could not recall whether it had been sent. Spicer verified that it was mailed on December 3, 2014. When the Deed was returned to her office, she did not attempt to resend it due to the letter she had received from [IRH's] attorney.

Duane Trautman, the City Fire Commissioner, testified that he had investigated and prepared a report of the fire. He explained that when preparing the report, he usually ascertains the owner's identity at the scene and then verifies the information with the County Assessment Office. After the fire he was told by the occupants of the Property that [IRH] was the owner. Trautman also determined [IRH's] ownership status by locating the Tax Claim Deed which was recorded on November 21, 2014.

In addition, he obtained [IRH's] Articles of Incorporation from the Pennsylvania Department of State Corporation Bureau which identified Hartman as [IRH's] incorporator. On December 3, 2014, Hartman called Trautman and identified himself as the owner of the Property. During that conversation, the two discussed the damage caused by the fire and Hartman inquired about the necessary cleanup and repair.

Trial Court Opinion, 9/12/2016, at 1-5.

Subsequently, several citations were issued to IRH regarding the unsafe condition of the property, which remained untended. At trial, Hartman argued IRH had unilaterally rescinded the purchase of the property by refusing to accept the deed. While Hartman did not challenge the facts underlying the citations, he claimed IRH was not the owner of the property and therefore could not be held culpable. The trial court rejected that argument and found IRH guilty of the summary offenses as noted above.[2]

Although Hartman has raised two issues in this timely appeal, they are both based on the same claim that IRH is not the owner of the property.[3]

_____

[2] Commonwealth Court of Pennsylvania has jurisdiction over appeals from final orders of the courts of common pleas in any case implicating the application, interpretation or enforcement of a local ordinance. 42 Pa.C.S.A. § 762(a)(4)(i)(B). However, the Commonwealth has not objected to this Court exercising jurisdiction over the instant appeal. Thus, pursuant to Rule of Appellate Procedure 741(a), [providing that the failure of an appellee to file an objection to the jurisdiction of an appellate court on or prior to the last day…for the filing of the record shall, unless the appellate court shall otherwise order, operate to perfect the appellate jurisdiction of such appellate court…] our jurisdiction is perfected. **Commonwealth v. Asamoah**, 809 A.2d 943, 945 n.1 (Pa. Super. 2003).

[3] Timing is the only difference between IRH's claims. In the first claim, IRH argues rejection of the deed rendered the sale void *ab initio*, while in the second, ownership was divested on the date the deed was rejected.

Essentially, IRH is seeking to avoid culpability by rescinding the tax sale after the property became a liability.

IRH cites three cases for the proposition that it can totally avoid the sale of the Property by simply refusing receipt of the recorded deed. *Tate v. Clement*, 176 Pa. 550 (1896), *In re Rouse*, 48 B.R. 236 (Bankr.E.D.Pa. 1985), and *Russell v. Equibank*, 8 B.R. 342 (Bankr.W.D.Pa. 1980).[4] However, none of these cases allow a purchaser of real property at a tax sale, after complying with all terms of the sale, and after the deed has been recorded in the purchaser's name, to disclaim the property to avoid an unexpected debt by refusing to accept delivery of the deed. In fact, *Russell* states:

> Pursuant to Pennsylvania law, a purchaser of real property at a sheriff's sale acquires, at the fall of the hammer, a vested interest in the property. *Marx Realty & Improv. Co. v. Boulevard Center, Inc.*, 398 Pa. 1, 156 A.2d 827 (1959). Cf., *Pennsylvania S.U.R. Co. v. Cleary*, 125 Pa. 442, 451, 17 A. 468, 478 (1889), which held that a purchaser acquired an "inchoate title"; with *Appeals of Roth*, 159 Pa. Super. 145, 47 A.2d 716 (1946), in which the court concluded that the purchaser acquired an "equitable interest which becomes a complete title on complying with the terms of the sale." *Id*. at

---

[4] IRH cited *Conlen v. Girsch*, 56 A.2d 231 (Pa. 1948) to support its claim that it had successfully renounced its purchase after becoming the equitable owner. Just as with the other cases cited by IRH, *Conlen* does not allow a purchaser to abandon a transaction, after payment and recording of the deed to avoid an unpleasant responsibility. In *Conlen*, the purchaser failed to comply with required terms of the sale. The fact that the purchaser had been the equitable owner did not entitle it to legal title. Even if we accepted this argument, which we do not, IRH would still be responsible for the two violations issued prior to its rejection of the deed.

150, 47 A.2d at 719. In ***Pennsylvania Co., etc. v. Broad Street Hospital***, 354 Pa. 123, 129, 47 A.2d 281, 284 (1946), the Supreme Court of Pennsylvania stated that:

> (t)he bona fide purchaser at a public sale of land, the moment it is knocked off to him, if he complies in all respects with the conditions of sale, instantly acquires a vested right to the property sold. Such a purchaser would be bound by his bargain thus made, although his bid greatly exceeded its value. And if he purchased at a bona fide sale, greatly below the value, the vendor would be bound by the sale. Equality in this case at least is equity. The vendee certainly should have the advantage of a purchase at a price below the value, when he is bound by a purchase at a price greatly exceeding the true value...

> In substance, the purchaser's position prior to the delivery of the deed is that of a purchaser by the articles of a private sales agreement. ***Appeals of Roth***, ***supra***, 159 Pa. Super. at 150, 47 A.2d at 719.

***Russell v. Equibank***, 8 B.R. at 344-45.[5]

Here, IRH was the bona fide purchaser of the Property and it complied in all respects with the conditions of the sale. IRH is therefore bound by its bargain, pursuant to the terms of sales agreement. The trial court noted that the terms of the sale included the facts that all sales are final and no sale will be cancelled.

Additionally, the trial court reasoned:

> ...[I]t is well-established law here that when the Agreement of Sale is signed, the purchaser becomes the equitable or beneficial owner through the doctrine of

_____

[5] We recognize that ***Russell*** involved a sheriff's sale, not a tax sale. However, we believe the principles are equally applicable, given both involve bona fide purchasers at a public sale of land.

equitable conversion. The vendor retains merely a security interest for the payment of the unpaid purchase money. …It is also the law of Pennsylvania that the purchaser of real estate bears the risk of loss for injury occurring to the property after execution of the Agreement of sale but before the settlement.

*DiDonato v. Reliance Standard Life Insurance Company*, 249 A.2d 327, 329 (Pa. 1969) (citations omitted).

Whenever an unconditional agreement has been made for the sale of land, such as equity will specifically enforce, T [sic] may properly be referred to and treated as sold. Then the vendee becomes the equitable owner, and the vendor holds the legal title as trustee. …So much is the vendee considered, in contemplation of equity, as actually seised of the estate, that he must bear any loss which may happen to the estate between the agreement and the conveyance, and he will be entitled to any benefit which may accrue to it in the interval, because by the contract He is owner of the premises to every intent and purpose in equity.

*Byrne v. Kanig*, 332 A.2d 472, 474 (Pa. Super. 1974) (citations omitted)

In *Pivirotto v. City of Pittsburgh*, 528 A.2d 125 (Pa. 1987), this doctrine was applied to the purchaser of property at a tax sale. At that time the applicable law provided a one-year period of redemption by the record owner. When there was no redemption within that time period, the property was conveyed to [Pivirotto] by treasury deed. One year prior to the sale, the City had inspected the property and found various violations of its housing code. After [Pivirotto] had purchased the property at the tax sale, the property was reinspected and condemned. Notice of the condemnation was [s]ent to the record owners, but not to [Pivirotto]. After the treasury deed was recorded, the property was demolished. [Pivirotto] then brought suit against the City for negligent demolition.

In attempting to define the term "owner" to determine the City's compliance with statutory notice provisions, the court noted "Appellee argues that as the successful bidder at the tax sale, he has an ownership interest, to wit equitable title, and, thus, he

has a legally protected property interest which entitles him to actual notice from the city of condemnation and demolition. We agree."

In addition to the benefits of ownership status, equitable owners are responsible for liabilities resulting from the subject property even prior to the conveyance of a deed. For example, in ***Byrne v. Kanig***, ***supra***, the equitable owner of real property under an installment-purchase arrangement was held liable for a municipal sewer lien which was incurred prior to conveyance of the deed.

Based on this reasoning, we believe that [IRH], as the equitable owner of the property, is responsible for taking the action outlined in the Notices of Violation. Its failure to comply with those directives, as set forth in the relevant citations, resulted in our finding it guilty of the summary charges. Acceptance of the deed was not a necessary precursor to [IRH's] entitlement to the benefits, as well as the detriments, of ownership of the Property and [IRH's] refusal to accept the Deed did not relieve it of those responsibilities.

Trial Court Opinion at 7-9.

We find no error in this reasoning and conclusion. The terms of sale were clear, all sales were final and no sale could be cancelled. Once the hammer fell on the Property, IRH became the equitable owner of the Property. IRH further complied with all terms of sale and the deed was recorded on November 21, 2014. Prior to delivery of the deed, the Property was severely damaged in a fire. There is no question that IRH was the equitable owner of the Property at the time of the fire. While the equitable owner is entitled to any benefits that accrue prior to the delivery of the deed, the equitable owner is equally responsible for liabilities. IRH cites no law, and we have found none, that allows the equitable owner to avoid the liabilities attendant to the purchase of property by refusing to accept

delivery of the deed that has been recorded. As such, IRH was properly found guilty of violating local ordinances regarding the safe upkeep and maintenance of real estate.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/1/2017