J-E02003-21

2022 PA Super 35

MICHAEL CALISTO,

         Appellant

         v.

MICHAEL RODGERS

:   IN THE SUPERIOR COURT OF
:         PENNSYLVANIA
:
:
:
:
:
:
:
:
:   No. 2834 EDA 2018

Appeal from the Judgment Entered November 2, 2018
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  160801903


BEFORE:  PANELLA, P.J., BENDER, P.J.E., BOWES, J., LAZARUS, J., OLSON,
        J., DUBOW, J., KUNSELMAN, J., MURRAY, J., and McCAFFERY, J.

CONCURRING OPINON BY BOWES, J.:       **FILED FEBRUARY 25, 2022**

I fully agree with the Majority's determination that none of the issues raised by Michael Calisto ("Seller") is cause for us to disturb the trial court's finding that he failed to prove his claims against Michael Rodgers ("Buyer"). I write separately to emphasize that the existence of valid deeds conveying the properties to Seller was not necessary to establish that Buyer no longer held title to those properties, and that the deeds Seller signed on behalf of his deceased mother are not the only writings in evidence that were sufficient to satisfy the statute of frauds and defeat his claim for quiet title.

I begin by examining evidence that was before the trial court which was not discussed in the Majority Opinion.  Buyer testified that he was in the business of flipping houses and was approached by an intermediary about purchasing some properties in Philadelphia.  **See** N.T. Trial, 3/27/18, at 23,

34-35. After inspecting the properties, Buyer informed Seller that he was interested in buying them at a suitably low price, given their poor condition. *Id*. at 37, 47-49. Buyer met with Seller again the next day, at which time Seller offered to sell the three properties for $250,000 in cash. *Id*. at 48-50. Buyer countered at $150,000, and Seller immediately accepted. *Id*. at 50. Seller represented to Buyer that there were others interested in the real estate, so Buyer needed to act fast and put $10,000 cash down to show that he was serious. *Id*. at 50-51.

Buyer testified that he gave Seller $10,000 in cash the next day. N.T. Trial, 3/27/18, at 51. In exchange, Seller provided a written purchase agreement memorializing that Buyer had agreed to purchase 647 North 16th Street, 651 North 16th Street, and 424 North 32nd Street, owned by Joan Calisto, for a total of $150,000 cash, and that the down payment of $10,000 cash would be applied toward the purchase price. *See* Plaintiff's Exhibit 4 at 1. The agreement specified that the properties were dilapidated, were being sold as-is, and that Buyer would assume all liens on the properties. *Id*. at 2. The writing further indicated with an "X" that Buyer accepted the offer, and the seller's assent was noted with the initials "J.C." *Id*. Seller signed it on behalf of "Prime Real Estate, LLC," which is listed as the "selling company."[1] *Id*. at 3; N.T. Trial, 3/27/18, at 165. Seller avowed that Prime Real Estate

---

[1] The signature is illegible. *See* Plaintiff's Exhibit 4 at 3.

was his company, and that he had the legal authority to execute the sale of the real estate "because his mother gave him the property." N.T. Trial, 3/27/18, at 158-59. **See also id**. at 60 (Buyer testifying that Seller stated that he owned the properties "by way of his mother"). Thereafter, Buyer supplied the remaining purchase price in cash, at Seller's insistence, and Seller provided the deeds discussed in the Majority Opinion.

After Buyer began rehabilitating the properties, Seller filed the instant action claiming that he, not Buyer, was the lawful owner of the three townhouses bequeathed to him by his mother, Joan Calisto. **See** Amended Complaint, 1/24/17, at ¶¶ 16, 20. The trial court ruled to the contrary. In arguing that the statute of frauds entitles him to relief from this Court, Seller solely focuses on the deeds that Joan Calisto could not have signed after her death. **See** Seller's Amended Brief at 31-32. In so doing, Seller misapprehends the importance of the deeds and the application of the statute of frauds.

The statute of frauds "prevent[s] the enforcement of unfounded fraudulent claims by requiring that contracts pertaining to interests in real estate be supported by written evidence." **Strausser v. PRAMCO, III**, 944 A.2d 761, 765 (Pa.Super. 2008) (internal quotation marks omitted). A writing need not be so formal as a deed to fulfill the requirements of the statute of frauds. Instead, a court "should always be satisfied with some note or memorandum that is adequate to convince the court that there is no serious

possibility of consummating fraud by enforcement." ***In re Beeruk's Estate***, 241 A.2d 755, 758 (Pa. 1968) (cleaned up). This Court has noted that the writing necessary to satisfy the statute "need only contain a sufficient statement of the terms of the agreement and the signature of the grantor." ***In re Estate of Dotterer***, 579 A.2d 952, 954 (Pa.Super. 1990). Similarly, "there is no requirement in the Statute or the decisional law that a signature be in any particular form." ***Hessenthaler v. Farzin***, 564 A.2d 990, 993 (Pa.Super. 1989).

> Instead, the focus has been on whether there is some reliable indication that the person to be charged with performing under the writing intended to authenticate it. Thus, for example, the Restatement (Second) of Contracts provides that:
>
> > The signature to a memorandum may be **any symbol made or adopted with an intention, actual or apparent, to authenticate the writing as that of the signer.**

***Id***. (emphasis in original) (quoting Restatement of Contracts § 134).

Hence, the statute of frauds does not require the existence of a writing which in and of itself constitutes an enforceable contract for the sale of land, let alone a deed which effectuated transfer of title. All that the statute requires is that some signed writing supports the existence of an agreement for the sale of real estate. ***See***, ***e.g.***, ***Beeruk's Estate***, ***supra*** at 758.

From these facts detailed above, which were credited by the trial court, Seller's statute-of-frauds arguments fail based upon the purchase agreement alone. This document not only listed the properties by address, identified

Seller's mother as the owner, and stated the purchase price and the down payment, but it also was signed by Seller, albeit on behalf of a fictitious selling company. As such, the purchase agreement was sufficient to satisfy the statute of frauds and establish that Seller contracted with Buyer to transfer ownership of the properties.

Therefore, Seller was no longer the lawful owner of the properties at the time he filed the instant action. From the moment Seller entered into the contract to sell the properties to Buyer, Seller retained only a security interest in them until such time that Buyer fulfilled his part of the bargain by paying the purchase price. *See Commonwealth v. Inv. Res. Holding, Inc.*, 168 A.3d 225, 229 (Pa.Super. 2017) ("It is well-established law here that when the Agreement of Sale is signed, the purchaser becomes the equitable or beneficial owner through the doctrine of equitable conversion. The vendor retains merely a security interest for the payment of the unpaid purchase money.") (cleaned up)). *See also Plauchak v. Boling*, 653 A.2d 671, 674 (Pa.Super. 1995) (noting that an "equitable owner under contract for sale . . . may maintain suit to quiet title"). Buyer paid the remainder of the purchase money to Seller long before the trial court adjudicated Seller's quiet title claim. *See* N.T. Trial, 3/27/18, at 16-19, 58 (testimony indicating Buyer paid the remainder of the purchase price to Seller in cash in July 2016).

Therefore, even if Seller never delivered valid deeds to Buyer, the statute of frauds does not serve as a basis for this Court to disturb the trial

court's verdict.  ***See***, ***e.g.***, ***Woodhouse Hunting Club, Inc. v. Hoyt***, 183 A.3d 453, 457 (Pa.Super. 2018) ("The plaintiff bringing a quiet title action has the burden of proof and must recover on the strength of its own title.").  I would reject Sellers arguments concerning the statute of frauds on this basis.

I join the Majority's resolution of Seller's other claims of error.

Judges Olson, Dubow and Murray join this Concurring Opinion.